725 A.2d 1069

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Erroll Donnelly BROWN.

Misc. AG No. 2 and Misc. AG No. 34, Sept. Term, 1998.

Court of Appeals of Maryland.

March 11, 1999.

Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Deputy Bar Counsel, for the Attorney Grievence Commission of Maryland, for petitioner.

William C. Brennan, Jr., of Upper Malboro, Maryland, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

Bar Counsel filed two Petitions for Disciplinary Action on behalf of petitioner, Attorney Grievance Commission, against Erroll Donnelly Brown, respondent, pursuant to Maryland Rule 16–709. Both petitions were consolidated for review before the Court of Appeals. The first petition (Misc. Docket AG No. 2) alleges numerous violations of the Maryland Rules of Professional Conduct based on three separate complaints filed against respondent. The second petition (Misc. Docket AG No. 34) seeks a "reciprocal" sanction for respondent's suspension for thirty days from the practice of law in the District of Columbia. We referred both petitions to circuit court judges for findings of fact and proposed conclusions of law. They were ultimately heard by Judge James J. Lombardi. In the first petition, Judge Lombardi found clear and convincing evidence of all counts presented by petitioner. In the second petition, he found clear and convincing evidence of all but one count. We sustain the findings of fact. We accept most of the court's proposed conclusions of law as modified, *infra*. We shall suspend respondent indefinitely, with permission to apply for readmission after one year.

## I. Background

Petitioner filed the first petition on March 12, 1998. The matter was referred to Judge Arthur M. Monty Ahalt who conducted a fact-finding hearing regarding this petition on June 1, 1998, and filed his findings of fact and proposed conclusions of law on June 30, 1998. Respondent excepted to those findings and moved for a remand for new proceedings because he was absent from the hearing. We granted respondent's motion on July 28, 1998.

Petitioner filed the second petition on July 22, 1998. The two petitions subsequently were consolidated and both cases argued together on October 1, 1998, before Judge Lombardi of the Circuit Court for Prince George's County. Judge Lombardi made the following findings with respect to the first petition (Misc. Docket AG No. 2):

1. Wanda Johnson, Esq. of the District of Columbia Bar, Kirk Wilder, Esq. of the Virginia Bar, and Erroll Donnelly Brown, Esq. of the Maryland Bar represented Tammie Davis in a lawsuit brought in the United States District Court for the Eastern District of Virginia alleging *inter alia* racial and gender discrimination in the work place. *Davis v. P.R.C., Incorporated,* Civil Action No. 94–938–A. At the end of discovery the defendant's motion for summary judgment was granted.

2. At that time Ms. Johnson, Mr. Wilder, and Mr. Brown were each sanctioned by the Court at the request of the defendants, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 1981(a) and Rule 11 of the Fed. Rules Civ. Proc. for "re-filing and pursuing a race discrimination complaint that had no evidentiary basis."

3. Mr. Brown paid $14,000, which was his share of the sanctions imposed by the federal court.

4. Mr. Brown failed to respond to Bar Counsel's request for information concerning the matter set forth above.

5. Erroll Donnelly Brown represented Rhonda Jones in a dispute with Johns Hopkins Hospital over the termination of her employment at the hospital. In that regard he pursued two separate courses of action for Ms. Jones. One was a complaint for declaratory judgment in the Circuit Court for Baltimore City, *Jones v. Johns Hopkins Hospital et al,* Civil Action No. CE190143, seeking representation of counsel at the termination hearing at the hospital (so as to contest the reasons for the firing). The second was an effort to convince the Maryland Department of Economic and

Employment Development ("MDEED") to amend the reasons for Ms. Jones' firing from "gross misconduct" to "misconduct," (so as to contest the reasons for her firing and to reduce the economic impact of her termination.) This was later appealed as *Jones v. Johns Hopkins Hospital,* Civil Action No. CL194784.

6. Mr. Brown introduced Ms. Jones to Kirk Wilder, Esq. of the Virginia Bar and advised her that Mr. Wilder would be assisting him on her case. Mr. Wilder's main office was in Virginia and Mr. Brown's office was in Maryland. Mr. Wilder assisted Mr. Brown on cases in Maryland as an associate of Mr. Brown's law firm.

7. Mr. Wilder's name was on the pleading but he did not sign any pleadings as an attorney for Ms. Jones. He attended the MDEED hearing in December 1994 as an assistant to Mr. Brown. No motion to admit Mr. Wilder pro hac vice was filed. Mr. Wilder never appeared in Circuit Court on this matter.

8. Mr. Brown was successful in having MDEED amend the reasons for Ms. Jones' firing from "gross misconduct" to "misconduct." Ms. Jones subsequently obtained new employment within thirty days of her termination from Johns Hopkins Hospital.

9. In the spring of 1996 the Circuit Court notified counsel and Ms. Jones of its decision to affirm the decision of MDEED with respect to Ms. Jones['] administrative appeal and of its intention to dismiss the declaratory action seeking counsel at the termination hearing.

10. Because of personal problems Mr. Wilder abruptly terminated his relationship with Mr. Brown in the Spring of 1996. This left Mr. Brown without assistance on many of his cases including the Jones case.

11. Ms. Jones attempted to contact Mr. Wilder and Mr. Brown concerning the dismissal notification and did not receive a timely response.

12. Mr. Brown failed to promptly communicate with Ms. Jones or keep her fully apprised of developments in her case.

13. Mr. Brown's letterhead noted that Mr. Wilder is associated with Mr. Brown's firm and listed a Virginia telephone number for Mr. Wilder. The letterhead did not specifically state that Mr. Wilder is only admitted to practice in Virginia.

14. Mr. Brown entered into a compromise settlement agreement and mutual release with Ms. Jones and paid her $1,150.00.

15. Mr. Brown failed to take substantive action on Ms. Jones['] behalf; he failed to act with promptness and diligence, which caused the declaratory action to be dismissed.

16. Mr. Brown failed to respond to Bar Counsel's requests for information concerning the matter set forth above.

17. Erroll Donnelly Brown represented Clarence L. Blair in a lawsuit in the Circuit Court for Prince George's County, *Blair v. Chelsea Wood Condominium*, Civil Action No. CAL05998 alleging the wrongful towing of Mr. Blair's motor vehicle by the condominium association.

18. The defendant filed a Motion to Dismiss alleging that no such cause of action existed in Maryland. Mr. Brown did not appear at the hearing on the Motion to Dismiss and the court granted the motion and later granted attorney's fees.

19. Mr. Brown filed an appeal to the Court of Special Appeals of Maryland which affirmed the Motion to Dismiss but vacated the order granting attorney's fees because the trial court found the suit to be "without merit" rather than the correct standard of "without substantial justification."

20. A remand hearing was set before the Honorable Audrey Melbourne [for] September 6, 1996 on the sole issue of attorney's fees.

21. On September 3, 1996 Mr. Brown presented the Honorable Michelle D. Hotten (chambers judge) with a motion to withdraw his appearance on behalf of Mr. Blair. Mr. Brown neglected to inform Judge Hotten that the case was scheduled for a hearing three days later before Judge Melbourne. The motion also sought the recusal of Judge Melbourne because of separate litigation in the United States District Court for the District of Maryland involving a client of Mr. Brown's and the local Public Defender Office in which Judge Melbourne was a witness.

22. The motion falsely stated that Mr. Brown had an inherent conflict of interest with his client that prevented him from ethically representing Mr. Blair. Mr. Brown also falsely implied that Mr. Blair was unavailable and that there was no current telephone number that was available at the addresses Mr. Blair had provided.

23. Judge Hotten permitted Mr. Brown to withdraw his appearance but later rescinded her order and notified Mr. Brown's office and Mr. Blair the night before the hearing.

24. Mr. Brown did not appear at the September 6, 1996 hearing, nor did he give Mr. Blair notice that he was withdrawing from the case.

25. On September 6, 1996, at the hearing, Mr. Blair told Judge Melbourne that he had spoken to Mr. Brown the night before and that although he had changed his business address, his home address and phone number remained the same. Mr. Blair also stated at the hearing before Judge Melbourne concerning the lawsuit itself that he also felt there was legal justification and that is the reason that he filed. (Exhibit 35, page 4, line 24–25). Judge Melbourne found that the lawsuit

was brought without substantial justification and divided the sanctions equally between Mr. Brown and Mr. Blair.

26. During the course of the litigation Mr. Brown's office-mailing practices caused some delay in the mailings which affected the certificates of service. . However, the Court of Special Appeals did not take any action on this matter which was raised by defense counsel.

27. Mr. Brown knowingly and willfully failed to respond to Bar Counsel's request for information concerning the matter set forth above.

28. Erroll Donnelly Brown was admitted to practice as an attorney in Maryland in 1988. After serving with a private firm he established his own office for the practice of law in 1992 with a focus on employment law and Title VII matters.

29. In an attempt to build a regional practice in employment law he associated with attorneys in the District of Columbia and Virginia. One of the attorneys he associated with was Kirk Wilder, Esq. of the Virginia Bar.

30. Since the grievance matters were filed against Mr. Brown he has taken significant corrective actions concerning the practice of law. He has scaled back his practice and has become more discriminating in the cases he accepts. He has embarked upon a program of conducting extensive pre-filing investigation of all potential lawsuits and of providing clients with written opinions concerning their cases. He has consulted with attorney-mentors from the National Bar Association to obtain assistance in various cases and to obtain case management software for his practice. He has also obtained a secure mailbox with specific mailing procedures to alleviate any problems with certificate of service mailings.

31. Mr. Brown has promised to seek mental health counseling to deal with what he describes as "self-destruc-

tive procrastination tendencies concerning personal matters."

32. Mr. Brown was candid at the hearing before the court. He acknowledged the errors that he had made in these cases and demonstrated a willingness to improve his practice of law.

Judge Lombardi reached the same conclusions that Judge Ahalt had in the earlier proceeding. Judge Lombardi found that in Ms. Davis' case, respondent had violated Maryland Rules of Professional Conduct (MRPC) 3.1 (Meritorious claims and contentions), 8.1(b) (Bar admission and disciplinary matters), and 8.4(d) (Misconduct). Pertaining to Ms. Jones' complaint, Judge Lombardi found that respondent had violated MRPC 1.3 (Diligence), 1.4(a)–(b) (Communication), 5.5(b) (Unauthorized practice of law), 7.1(a) (Communications concerning a lawyer's services), 7.5(a)–(b) (Firm names and letterheads), 8.1(b), and 8.4(d). In Mr. Blair's case, the judge found that respondent had violated MRPC 3.1, 3.3 (Candor toward the tribunal), 8.1(b) and 8.4(d).

The second petition (Misc. Docket AG No. 34) argued before Judge Lombardi alleged that on April 9, 1998, the District of Columbia Court of Appeals suspended respondent from the practice of law for thirty days. Judge Lombardi found, with respect to this petition, that:

1. Erroll Donnelly Brown was disciplined by the District of Columbia Court of Appeals on April 9, 1998 on a reciprocal matter from Maryland and because of the tendering of a check in the amount of $135.00 for a filing fee to the Superior Court of the District of Columbia which was returned for insufficient funds.

2. Mr. Brown failed to respond to Bar Counsel's requests for information concerning the matter set forth above.

3. The check in the amount of $135.00 was made good on July 10, 1998.

Judge Lombardi found that respondent had violated MRPC 8.1 and 8.4(c). Petitioner seeks a reciprocal sanction and excepts because Judge Lombardi did not rule that respondent

violated MRPC 8.4(d) as alleged in the second petition. Respondent has filed several exceptions, which we shall address, *infra.*

## II. Discussion

We stated in *Attorney Grievance Commission v. Gavin,* 350 Md. 176, 189, 711 A.2d 193, 200 (1998), that:

This Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709b; *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. The "hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). Accordingly, the ultimate decision as to whether a lawyer has violated professional rules rests with this Court. *Garland,* 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995).

### A. First Petition (Misc. Docket AG No. 2)

#### 1. Complaint Regarding *Davis v. P.R.C., Inc.*

Respondent includes, among his exceptions, a challenge to the conclusion by the trial court that he has violated MRPC 3.1. The trial court's findings relating to this allegation are found in paragraphs 1 through 3, *supra,* with regard to the case of *Davis v. P.R.C., Inc.,* Civil Action No. 94–938A (E.D.Va.).

### a. MRPC 3.1 (Meritorious claims and contentions)

The findings of the trial court with regard to MRPC 3.1 are merely conclusory. Paragraph 1 of the findings describes the title and nature of the underlying lawsuit for which respondent was sanctioned and states that the defendant's motion for summary judgment in that case was granted. Paragraph 2 states that sanctions were assessed against respondent by the United States District Court for the Eastern District of Virginia. Paragraph 3 states that respondent was sanctioned $14,000. No other findings with respect to this matter were made. The trial court's conclusion that respondent violated MRPC 3.1, therefore, was based completely on the sanction by the federal tribunal. Although sanctions by other tribunals may constitute part of the findings supporting a conclusion that MRPC 3.1 has been violated, such sanctions cannot, standing alone without other findings, sufficiently prove such a violation occurred.

In contrast to this case is *Attorney Grievance Commission v. Alison,* 349 Md. 623, 709 A.2d 1212 (1998). In *Alison,* the attorney, a paralegal at the time of his misconduct, drafted a complaint for damages seeking $4,000,000 based upon the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, on behalf of a plaintiff whose car had been repossessed. After the complaint was filed in the Circuit Court for Baltimore City, the case was removed to the United States District Court for the District of Maryland. The federal court sent the case back to the circuit court, but not before stating that had the complaint been filed in federal court first, sanctions for filing a frivolous complaint would have been appropriate. We noted that the circuit court dismissed the case with prejudice and the defense subsequently filed a motion under Maryland Rule 1–341[1] for sanctions.

---

1. Rule 1–341 provides:

 In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to

In that case, unlike the case *sub judice*, the hearing judge to whom we referred the disciplinary matter, Judge Alfred L. Brennan, made specific findings as to the underlying facts regarding the filing of the frivolous complaint. We noted that Judge Brennan found the circuit court had made previous findings on the sanctions issue

> that Respondent [ (Alison) ] " 'controlled the direction of activities in this case' " and was without " 'a reasonable basis for believing that the claims would generate an issue of fact for the fact finder and therefore lacks substantial justification.' " In addition, the circuit court found that Respondent "led the charge and [trial counsel] followed his lead." With regard to certain counts, the circuit court found that the attorneys "brought the RICO and fraud counts vexatiously for the purpose of harassing the defendants which in [the court's] view amounts to bad faith under interpretations of Maryland Rule 1–341." Furthermore, the circuit court found that Respondent added the RICO claim "solely to take advantage of the treble damages provision of the RICO statute in order to obtain an exorbitant settlement from the defendants," and the RICO count "amounts to a claim brought in bad faith and without substantial legal or factual justification."

*Id.* at 632, 709 A.2d at 1216 (third alteration in original). Judge Brennan then stated in his findings on the disciplinary charges:

> "In assessing sanctions, Judge [Thomas E.] Noel noted that he felt that Stuart L. Alison was more culpable and therefore, the amount of sanctions were fashioned accordingly. There have been no less than four separate reviews by various judges deciding adversely to the Respondent concerning his pursuing this case.

---

> the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees incurred by the adverse party in opposing it.

* * *

It is clear from an examination of this case that Stuart L. Alison was the captain of the ship and directed its course from beginning to end. This case was never worth $4,000,-000, but could have been resolved by a Writ of Replevin. Mr. Alison went after deep pockets, hoping to get a settlement from either a bank, an automobile agency, an attorney, or all of them."

*Id.* (alterations in original). We went on to state:

Judge Brennan then found by clear and convincing evidence that "the inclusion of a RICO count in the *McAnulty* case was totally without merit. [The United States District Court] was of the same opinion and would have imposed sanction under Rule 11, if allowed." Based on these findings of fact, Judge Brennan concluded that Respondent violated Rule of Professional Conduct 3.1 stating that: "From a review of this case by the Judges who have been asked to rule on the merits of the various counts, the evidence is overwhelming that Stuart L. Alison engaged in filing these claims, after his actions were ruled upon by Judge Byrnes and Judge Noel." Judge Brennan also concluded that Respondent violated Rule of Professional Conduct 4.4, noting that Ms. McAnulty's suit "was an attempt to get to some deep pockets by using a shotgun approach[ ] and hoping to obtain a good settlement." Finally, Judge Brennan concluded that Respondent violated Rule of Professional Conduct 8.4(d) and that his action, "wherein he included a RICO count in a Complaint that had absolutely no foundation of facts in the hopes of obtaining treble damages[,] is not to be condoned as acceptable practice of law."

*Id.* at 632–33, 709 A.2d at 1216–17 (footnotes omitted) (alterations in original). In the case at bar, Judge Lombardi made no such independent appraisal in its findings of fact as to this specific alleged offense, but merely relied on the previous imposition of sanctions by the federal court and omitted from

his findings any other factual considerations. We accordingly overrule this finding.

### b. MRPC 8.4(d) (Misconduct)

MRPC 8.4(d) states that it is misconduct to "engage in conduct that is prejudicial to the administration of justice." Failure to adequately represent a client violates MRPC 8.4(d). We held in *Attorney Grievance Commission v. Ficker,* 319 Md. 305, 315, 572 A.2d 501, 506 (1990), that tardiness or absence from a trial may violate former Code of Professional Responsibility (Code) Disciplinary Rule (DR) 1–102(A)(5),[2] which contained virtually the same text as current MRPC 8.4(d). An attorney's repeated failure to properly represent his clients and communicate with them violates DR 1–102(A)(5). *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 159, 567 A.2d 112, 115 (1989) (*Montgomery II* ). Finally, an attorney's failure to prosecute a divorce claim and later neglecting to inform his client that he has been suspended also breaches DR 1–102(A)(5). *Attorney Grievance Comm'n v. Singleton,* 315 Md. 1, 6, 553 A.2d 222, 224 (1989). In this case, the record clearly and convincingly shows that respondent did not appear on behalf of his client at the fees and sanctions hearing. A letter from Ms. Jones also states that respondent failed to contact her around the time of the hearing. Respondent therefore violated MRPC 8.4(d).

### c. MRPC 8.1(b) (Bar admission and disciplinary matters)

A review of the record confirms that Bar Counsel sent a letter to respondent on June 16, 1995, requesting information relating to the disciplinary complaint lodged against him. Bar Counsel mailed a second letter on July 14, 1995, and received a return receipt. Respondent was sent a final warning to reply on August 9, 1995. Respondent did not answer

---

2. The Code of Professional Responsibility was replaced by the current Maryland Rules of Professional Conduct on April 15, 1986, effective January 1, 1987.

any of these letters. Such conduct violates MRPC 8.1(b), which states that a lawyer subject to an attorney disciplinary proceeding may not "knowingly fail to respond to a lawful demand for information from a[ ] . . . disciplinary authority."

In *Attorney Grievance Commission v. Hallmon,* 343 Md. 390, 681 A.2d 510 (1996), a Bar Counsel investigator had telephoned Mr. Hallmon to request an interview. An Assistant Bar Counsel then sent a letter to the attorney requesting that he meet with the investigator. The letter advised Mr. Hallmon that if he refused, the matter would be referred to an Inquiry Panel, which could subpoena him. Mr. Hallmon declined the interview by letter. We held that such conduct violated MRPC 8.1(b). *Id.* at 408–09, 681 A.2d at 519. We also have suspended an attorney in part because he "failed to answer Bar Counsel's requests for information," *Attorney Grievance Comm'n v. David,* 331 Md. 317, 323, 628 A.2d 178, 181 (1993), although we did not cite any particular rule in reaching that sanction.

## 2. Complaint Regarding *Jones v. Johns Hopkins Hospital*

MRPC 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." MRPC 1.4 provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

We stated in *Attorney Grievance Commission v. Montgomery,* 296 Md. 113, 120, 460 A.2d 597, 600 (1983) (*Montgomery I* ), that the "lack of communication with one's client, for whatever reason, is a matter of continuing concern to the public. Moreover, this Court has consistently regarded neglect and inattentiveness to a client's interests to be [an ethical violation] warranting the imposition of some disciplinary sanction."

*Montgomery I* involved five different cases in which the attorney repeatedly failed to return communications from clients and neglected to file timely claims on their behalf. Apparently, the sixty-day suspension in *Montgomery I* did not deter the attorney; he was found to have neglected three more cases in which he also failed to communicate with clients in *Montgomery II*, 318 Md. 154, 567 A.2d 112. We disbarred him.

In *Ficker*, 319 Md. 305, 572 A.2d 501, we disciplined an attorney who in two separate cases neglected to file his appearance pursuant to Maryland Rule 4–214(a) or to appear in court on behalf of his clients. Mr. Ficker argued before this Court that under DR 6–101(A)(3),[3] a single failure to appear did not amount to "neglect" of a legal matter. His argument was based on the comment to DR 6–101. We noted, however, that we interpreted DR 6–101 more broadly than the comment. In addition, we had held already in *Montgomery I* that a single failure to appear could constitute a violation of DR 6–101(A)(3). Thus, Mr. Ficker's failure to appear in each case constituted "neglect." *Id.* at 311–12, 572 A.2d at 504.

In this case, it appears respondent represented Ms. Jones effectively until he and Mr. Wilder parted ways. After that point, he ceased all communications with Ms. Jones regarding the status of her case or what actions he might take on her behalf. He also failed to act timely by failing to appeal the circuit court's ruling. As the comment to MRPC 1.3 provides:

> Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions.... [U]nreasonable delay can cause a client

---

**3.** DR 6–101(A)(3) provided: "A lawyer shall not ... [n]eglect a legal matter entrusted to him." The comment to MRPC 1.3 cites DR 6–101 as its earlier Code of Professional Responsibility counterpart, although the language of the two rules differ. The comment to MRPC 1.4 notes that the rule has no counterpart in the Code of Professional Responsibility. The comment, however, does state that DR 6–101 and MRPC 1.4 are analogous.

needless anxiety and undermine confidence in the lawyer's trustworthiness.

Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client.

■ The comment to MRPC 1.4 states that "[e]ven when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter." Here, respondent failed to inform Ms. Jones of the pending circuit court order to affirm the decision in her administrative case and to dismiss her declaratory judgment action. He also failed to act promptly on her behalf when he did not advise her in respect to her right to appeal from those rulings. Respondent clearly violated MRPC 1.3 and 1.4(a)–(b).

■ We already have noted, *supra*, that failure to appear or to litigate timely on behalf of a client violates MRPC 8.4(d). Failure to inform a client about his or her case or return telephone calls also violates this rule. Respondent also violated MRPC 8.4(d) in Ms. Jones' case.

■ Turning to respondent's association with Mr. Wilder, MRPC 5.5(b) provides that a lawyer may not "assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." The record clearly and convincingly reflects that respondent associated with Mr. Wilder, an attorney not licensed to practice law in the State of Maryland, in Ms. Jones' case. None of the court pleadings associated with Ms. Jones' case contain Mr. Wilder's signature; nevertheless, Mr. Wilder's name appears below respondent's signature on those pleadings. Respondent also introduced Mr. Wilder as co-counsel on behalf of Ms. Jones to the administrative hearing examiner. The clerk of this Court has certified that Mr. Wilder is not admitted to practice in Maryland and records show that he has moved to practice *pro hac vice* only once in an unrelated 1995 case. Mr. Wilder's oral appearance on behalf of Ms. Jones at the administrative hearing constituted a "practice of law," in which respondent assisted in violation of MRPC 5.5(b).

▆▆▆▆ Respondent's letterhead shows that he included Mr. Wilder's name as co-counsel without indicating that Mr. Wilder was not admitted to the Maryland Bar. This breaches the express provisions of MRPC 7.5(b), which require a law office practicing in more than one jurisdiction to "indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located." Omitting that fact also violated MRPC 7.1, which states that "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services." MRPC 7.1(a) partly defines a communication as false or misleading when it "omits a fact necessary to make the statement considered as a whole not materially misleading." Respondent's omission on his letterhead that Mr. Wilder was not licensed to practice in Maryland courts without special admission could have misled each of his clients, including Ms. Jones, into believing he or she was receiving proper representation from both attorneys. We note also that respondent's omission of this fact violated MRPC 7.5(a), which prevents lawyers from using their office letterhead in violation of MRPC 7.1. Accordingly, we sustain Judge Lombardi's proposed conclusion that respondent violated the provisions of MRPC 5.5(b), 7.1(a), and 7.5(a)–(b).

Finally, as in Ms. Davis' case, respondent neglected to respond to Bar Counsel's request for information regarding Ms. Jones' complaint. He acknowledged receipt of a March 22, 1996, letter from Bar Counsel, to which he did not respond. Nor did he respond to a follow-up letter dated April 23, 1996. As we held, *supra*, respondent's lack of response violates MRPC 8.1(b).

### 3. Complaint Regarding *Blair v. Chelsea Wood Condominium*

The record shows that respondent filed a civil complaint on behalf of Mr. Blair seeking equitable relief from an unauthorized towing. The circuit court dismissed the case and assessed attorneys fees against Mr. Blair pursuant to Maryland Rule 1–341. Respondent did not appear at that hearing on the motion to dismiss relating to Mr. Blair's complaint or at

the Rule 1–341 hearing on remand from the Court of Special Appeals.

In his findings in the instant disciplinary complaint regarding MRPC 3.1, Judge Lombardi found that respondent filed a civil complaint, which was dismissed upon a motion alleging that no such action existed, and that sanctions were imposed. This is merely a finding that sanctions have been imposed by another court. A prior imposition of sanctions, standing alone and without additional factual findings by the court hearing the petition, is not sufficient to support a conclusion that an attorney violated MRPC 3.1. Such a holding would result in formal disciplinary proceedings in every instance in which sanctions under Maryland Rule 1–341 are imposed. We have noted, *supra,* however, that failure to appear on behalf of a client in a hearing may violate MRPC 8.4(d). Thus, we hold that although the sanctions on respondent's conduct for his violation of Maryland Rule 1–341 did not prove a violation of MRPC 3.1, respondent violated MRPC 8.4(d) by not appearing on behalf of Mr. Blair or himself at either of the two sanctions hearings in Mr. Blair's case. We note that Judge Lombardi found below that respondent violated MRPC 8.1(b) in regard to this complaint by not responding to Bar Counsel's request for information. Bar Counsel did not allege such a violation in this complaint, however. Nor have we found any evidence in the record that respondent committed such a violation. Although respondent does not except to these findings, we overrule Judge Lombardi's findings of fact on this count. Considering the number of other counts we sustain against respondent, our overruling of the findings of fact with regard to MRPC 8.1(b) does not affect our sanction.

 Turning to respondent's alleged misstatements to Judge Hotten in chambers, we note that MRPC 3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal." We have emphasized that "[c]andor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315,

1319 (1994). The record shows that respondent made false statements of material fact to Judge Hotten when he moved to withdraw as Mr. Blair's attorney. He told Judge Hotten that a conflict of interest had arisen between him and Mr. Blair, yet Mr. Blair indicated at the sanction hearing on remand from the Court of Special Appeals that respondent's "conflict" was that "he wanted a bigger fee," which Mr. Blair had refused to pay. Respondent also claimed he was unable to contact Mr. Blair. Mr. Blair stated at the remand hearing, however, that although his business address had changed, his telephone number and home address had not. Respondent apparently was aware of that information because he telephoned Mr. Blair two days after his meeting with Judge Hotten. Respondent also failed to inform Judge Hotten that the remand hearing would have been three days after his withdrawal. When Judge Hotten discovered this, she rescinded the motion, noting respondent's omission of fact. All of these untruthful or misleading statements to Judge Hotten violate the provisions of MRPC 3.3(a)(1).

Respondent excepts to this finding, arguing the record reflects that he made "incorrect" statements in haste rather than intentional "false" statements to Judge Hotten, and thus did not violate MRPC 3.3. The record supports Judge Lombardi's findings of fact and proposed conclusions of law on this matter. False is false. MRPC 3.3 requires that the lawyer "knowingly" make false statements of material fact. Put simply, the facts support a finding that respondent knew he was misinforming the court. We deny the exceptions.

### B. Second Petition (Misc. Docket AG No. 34)

Bar Counsel argues the decision of the District of Columbia (D.C.) Court of Appeals is a final adjudication regarding the facts alleged in the second petition. Maryland Rule 16–710 e.1. states in relevant part that "[a] final adjudication in a disciplinary proceeding by a judicial tribunal ... that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges" before the court hearing the charges. We previously have cited disciplinary

adjudications by the D.C. Court of Appeals as conclusive proof before this Court that violations of the MRPC have occurred. *See Attorney Grievance Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Grievance Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984). The D.C. Court of Appeals in its decision regarding respondent stated:

> In this disciplinary proceeding, the Board on Professional Responsibility (Board) has found that respondent, Erroll D. Brown, violated Rule 8.4(d) of the District of Columbia Rules of Professional Conduct (prohibiting conduct which seriously interferes with the administration of justice) and D.C. Bar R. XI, § 2(b)(3) (failure to comply with orders of the Board). These charges arose as a result of respondent's tendering a check to the Superior Court of the District of Columbia as a filing fee for a client's complaint, which was returned for insufficient funds. In spite of numerous demands by court personnel, respondent failed to pay the sum due the court for his client's litigation expenses. Thereafter, respondent failed to respond to Bar Counsel's inquires for some eight months, evaded service of the Board's order, and failed to respond for three months to an order of the Board requiring a response within ten days. A hearing committee of the Board agreed with Bar Counsel's recommendation for a sanction of a thirty-day suspension, with reinstatement conditioned upon respondent's reimbursing the court the sum of $135 and providing an explanation concerning a cancelled check endorsed by respondent which he claims he tendered to Superior Court as reimbursement for the dishonored check. Respondent did not take exception to the findings and recommendation of the hearing committee and Bar Counsel.

*In re Erroll D. Brown,* 709 A.2d 724, 724–25 (D.C.1998).[4]

We sustain Bar Counsel's exception that Judge Lombardi should have concluded respondent violated MRPC 8.4(d).

---

4. Respondent's suspension in the District of Columbia also was based in part on a "reciprocal" sanction for an earlier suspension here in

The disciplinary body in the D.C. Court of Appeals' opinion already has ruled that respondent violated D.C. Rule of Professional Conduct 8.4(d). Similar to MRPC 8.4(d), the D.C. version of Rule 8.4(d), prohibits conduct "which seriously interferes with the administration of justice." We find the D.C. Court of Appeals' holding as to Rule 8.4(d) conclusive before this Court. We also note the D.C. Court of Appeals' opinion indicates that respondent failed to respond to the D.C. Bar's request for information regarding that incident. As we noted, *supra,* respondent's failure to respond to requests for information during a disciplinary investigation violates MRPC 8.1(b).

■ We also sustain Judge Lombardi's finding of fact that respondent's act of using a check with insufficient funds to pay a filing fee in the D.C. Superior Court breached MRPC 8.4(c), which prohibits "conduct involving dishonesty, fraud, deceit or misrepresentation." Respondent excepts to this finding because, he alleges, there was "no evidence to support the conclusion that he was dishonest or fraudulent when he failed to make the check good immediately." BLACK'S LAW DICTIONARY 468 (6th ed.1990) defines "dishonesty" in part as "[d]isposition to lie, cheat, deceive, or defraud; untrustworthiness; lack of integrity," and partly defines "fraud" as "[a]nything calculated to deceive, whether by a single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence ... or gesture." *Id.* at 660. We note, as the D.C. Court of Appeals' opinion states, even after respondent repeatedly was made aware of the bad check, he did not pay the filing fee. *In re Brown,* 709 A.2d at 724–25. Respondent's repeated failure to draft a good check to pay the filing fee demonstrated his intention to deceive the D.C. trial court. We overrule respondent's exception that he did not violate MRPC 8.4(c).

Maryland. *Id.; see also Attorney Grievance Comm'n v. Brown,* Misc. Docket (Subtitle BV) No. 47, slip op. (Md. Apr. 9, 1997).

### III. Sanction

Regarding the proper sanction to apply in an attorney grievance case, we noted recently in *Attorney Grievance Commission v. Ober,* 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998) that

> "[t]he purpose of disciplinary proceedings against an attorney is to protect the public rather than to punish the erring attorney." *Attorney Griev. Com'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991). "The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm. v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). The severity of the sanction depends upon the facts and circumstances of the case before this Court. *Hamby,* 322 Md. at 611, 589 A.2d at 56. Imposing a sanction protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." *Id.*

Bar Counsel recommends that respondent be suspended for a three-year period. Respondent, on the other hand, recommends a public reprimand. In *David,* 331 Md. at 323–24, 628 A.2d at 181, we suspended an attorney indefinitely from the practice of law because he "failed to return a fee which was unearned for a period of nine months; he failed to timely remit funds he received on behalf of a client; he failed to communicate with his clients; and in connection with the investigation of three of the complaints, [he] failed to answer Bar Counsel's requests for information." In *Alison,* 349 Md. at 644, 709 A.2d at 1222, we also imposed an indefinite suspension upon an attorney who committed misconduct under MRPC 8.4(d) and, like respondent, did not respond to Bar Counsel's investigatory requests in violation of MRPC 8.1(b). In that opinion, we noted that Mr. Alison previously had been suspended by this Court. Finally, in *Hallmon,* 343 Md. at 410, 681 A.2d at 520, we suspended the attorney for violating MRPC 8.1(b), as well as assisting in the unauthorized practice of law in violation of MRPC 5.5.

Consistent with *Alison, David,* and *Hallmon,* we find an indefinite suspension to be the appropriate sanction for respondent's conduct. The number of complaints before this Court are of great concern, as is respondent's previous suspension by this Court for similar conduct. *See Attorney Grievance Comm'n v. Brown,* Misc. Docket (Subtitle BV) No. 47, 1995 Term, slip op. (Md. Apr. 9, 1997). Mitigating factors, however, were found to exist. Judge Lombardi found that respondent has reduced his case load since the complaints were filed, sought a mentor on case management procedures through the National Bar Association, changed his office mailing procedures, and sought counseling for his "tendencies" to procrastinate. Thus, we will order that respondent may apply for readmission to the practice of law one year from the effective date of his suspension, which shall commence thirty days after this opinion is filed.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ERROLL DONNELLY BROWN; RESPONDENT'S SUSPENSION SHALL COMMENCE THIRTY DAYS FROM THE FILING OF THIS OPINION.