894 A.2d 602

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Leslie Blish HOLT.**

**Misc. Docket AG No. 12, Sept. Term, 2005.**

Court of Appeals of Maryland.

March 16, 2006.

Marianne J. Lee, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

John Thomas Maloney, Washington, DC, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, acting pursuant to Maryland Rule 16–751,[1] approved the filing by Bar Counsel of a Petition For Disciplinary or Remedial Action against Leslie B. Holt, the respondent. In

---

1. Maryland Rule 16–751 provides, as relevant:

   "(a) Commencement of Disciplinary or Remedial Action.

   "(1) *Upon Approval of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

the petition, Bar Counsel charged that the respondent engaged in misconduct, as defined by Maryland Rules 16–701(i),[2] and 16–812, and consisting of a violation of 8.4(b) and (d), Misconduct,[3] of the Maryland Rules of Professional Conduct, as adopted by the latter Maryland Rule.

We referred the case to the Honorable James L. Ryan, of the Circuit Court for Montgomery County, for hearing pursuant to Rules 16–752(a)[4] and 16–757(c).[5] Following a hearing at which the respondent appeared by counsel and participated, the hearing court concluded that the respondent violated Rule

---

**2.** Pursuant to Maryland Rule 16–701(i), " '[p]rofessional misconduct' or 'misconduct' has the meaning set forth in Rule 8.4 of the Maryland Rules of Professional Conduct, as adopted by Rule 16–812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

**3.** Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to:

\*       \*       \*       \*       \*       \*

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

\*       \*       \*       \*       \*       \*

"(d) engage in conduct that is prejudicial to the administration of justice;"

\*       \*       \*       \*       \*       \*

**4.** Maryland Rule 16–752(a) provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**5.** Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

8.4(b) and (d). The former conclusion was based on the respondent's commission of criminal acts, violation of Title 21, United States Code, § 844(a) (aiding and abetting) and Title 18, United States Code, § 2 (possession of a mixture and substance containing cocaine and cocaine base), reflecting adversely on his honesty, trustworthiness or fitness as a lawyer in other respects. The latter, that he engaged in conduct prejudicial to the administration of justice, was premised on the criminal conduct, taken in its totality.

These conclusions flowed from the facts found by the hearing court by clear and convincing evidence. The respondent, a member of both the Maryland and D.C. bars, was employed as an administrative law judge in the Social Security Administration in 2001 and, subsequently, in 2003, transferred to the United States Department of Agriculture, where he performed in the same capacity. While with the U.S. Social Security Administration, for more than a year, he resided in San Juan, Puerto Rico, where he was assigned to conduct administrative hearings. During that period, the respondent purchased and used cocaine, in addition, he admitted, to abusing alcohol.

With the respondent's transfer, in September 2003, to the Department of Agriculture, his place of employment was changed to the District of Columbia and he resumed his Maryland residence. In January 2004, the respondent was given an assignment, to arbitrate administrative hearings, which required him to go to San Juan. Although the assignment lasted for three days, from January 6 to January 9, the respondent extended his stay to January 11, the last two days being devoted to personal pursuits. When he arrived in San Juan, the respondent hired an automobile and engaged a hotel room, both at Government expense and for official business.

On January 9, after his hearings had concluded, the respondent, driving the automobile rented for official purposes, traveled to the Vista Hermose Public Housing Project, "an area known to sell narcotics in the past," for the purpose of purchasing narcotics and he did, in fact, make such purchase.

He then returned to his hotel room, where the cocaine he had purchased was consumed.

The respondent was arrested after his hotel room had been searched, pursuant to a search and seizure warrant, by agents of the Federal Bureau of Investigation (F.B.I.),[6] and substances, later determined to be crack cocaine and cocaine, and various narcotics paraphernalia, had been recovered.[7] He was indicted in the United States District Court for the District of Puerto Rico for possession of cocaine and for aiding and abetting another individual that participated in the crime with the respondent. Upon his plea of guilty to both counts, the respondent was sentenced to a period of three (3) years probation, supervised and, as required by the plea agreement, the respondent resigned his administrative law judge position. Pursuant to the terms of the probation the respondent was "subject to random urine drug tests under the coordination of the U.S. probation officer." The supervision of the respondent was transferred to the United States District Court for the District of Maryland, Southern Division.

The hearing court in the present case found mitigating factors and circumstances. They are:

"[T]he Court finds that the Respondent has complied with all supervisory conditions imposed upon him by the United States Pretrial Services Agency, the United States Probation Office and the Maryland State Bar Association's Law-

---

**6.** The F.B.I. was alerted that the respondent was an administrative law judge and about the respondent's "possible drug possession" on January 7, 2004. As a result, agents conducted surveillance of the respondent, during the course of which they observed him purchasing cocaine at the housing project. They obtained the search and seizure warrant for the respondent's hotel room.

**7.** Recovered upon execution of the search and seizure warrant were 31 vials full of a white powdery residue "consistent with crack cocaine," cigarette lights, plastic and glass "homemade" pipers, "homemade" metal spoons, burnt steel wool, plastic baggies, with residue, paper and cardboard, containing trace amounts of a powdery or granular substance and, from a search of the trash collected from the respondent's room, 46 plastic vials with a white powdery residue, "consistent with crack cocaine."

yer's Assistance Program. On February 2, 2004, the Respondent voluntarily entered into the Maryland State Bar Association's Lawyer's Assistance program. In addition to receiving counseling from a psychologist for his alcoholism, the Respondent has fully complied with the requirements of the Lawyer Assistant Program. Reports submitted by a consultative psychologist and the Lawyer's Assistance Program reflect a successful period of recovery.

"As a condition of his pretrial release and the probation that was subsequently imposed in his federal criminal case, the Respondent was required to submit to periodic urinalysis. All administration of the drug test procedures produced a negative result indicating that he was not using controlled substances during his eighteen months of surveillance.

"On September 1, 2005, as a result of the Respondent's performance while under the supervision of the federal probation authorities, the Honorable Alexander William[s], United States District Judge for the District of Maryland, issued an order granting an early termination of his probation."

Neither the petitioner nor the respondent has excepted to the findings of fact or the conclusions of law made by the hearing court. They have sharply divergent views of the appropriate sanction, however. The petitioner urges an indefinite suspension as the sanction. The respondent believes that a reprimand is more fitting. Both rely on the cases of *Attorney Griev. Comm'n v. Gilbert*, 356 Md. 249, 739 A.2d 1 (1999) and *Attorney Griev. Comm'n v. Black*, 362 Md. 574, 766 A.2d 119 (2001).

In *Gilbert*, the respondent, who was found to have violated Rule 8.4(d) only and who had no prior disciplinary history, was ordered suspended from the practice of law for thirty days. In addressing the appropriate sanction, we were influenced, in addition to his lack of a prior disciplinary history, by the fact that,

"so far as the record reveals, and certainly the petitioner has not alleged otherwise, this misconduct was not directly

related to the practice of law. Furthermore, the respondent has made efforts to rehabilitate himself and to overcome his addiction."

*Id.* at 256, 739 A.2d at 5. We ordered further: "Upon his reinstatement, the petitioner shall be monitored by Richard Vincent, the Director of the Lawyer Counseling Service of the Maryland State Bar Association, who will submit reports to Bar Counsel on a schedule to be determined by Bar Counsel, and the petitioner shall participate in such rehabilitative activities as Mr. Vincent shall prescribe." *Id.* at 256–57, 739 A.2d at 5.

In *Black*, as in this case, the respondent was charged with having, and found to have, violated Rule 8.4(b) and (d). After noting the similarities between that case and *Gilbert*—it was the respondent's first disciplinary proceeding, the misconduct was not directly related to the practice of law, the respondent had made efforts to rehabilitate himself and to overcome his addiction—we adopted the Commission's recommendation of an indefinite suspension, "rather than the more modest sanction imposed in *Gilbert*," as the appropriate sanction. 362 Md. at 579–80, 766 A.2d at 122. In so concluding, we observed:

"On the other hand, the respondent's addiction, although rather recently acquired, is severe and the respondent has had two significant set-backs, one in May 2000 and the other following the Circuit Court hearing. And the hearing judge commented on the respondent's failure to seek assistance from the Director of the Bar Association's Lawyer Counseling program or enroll in a program providing support and structure for his continuing rehabilitation."

*Id.* at 580, 766 A.2d at 122–23. In addition, "we decline[d] . . . the petitioner's invitation to delineate specific conditions of reinstatement, except the payment of costs, a condition in any event, whether stated or not, preferring to reserve to ourselves the broadest discretion to review, at the time of application, the respondent's fitness for reinstatement." *Id.* at 580, 766 A.2d at 123.

The petitioner believes that *Black* is the closest and the more persuasive precedent and, thus, the one that should be followed. It finds most persuasive this Court's concern in *Black* about set-backs and desire to insure as much as possible that a support system is in place to guard against them.[8] Therefore, the petitioner raises the specter of there being setbacks on the horizon for the respondent, relying on the respondent's "concession" that he used cocaine while residing in Puerto Rico, but "ceased using cocaine after he left Puerto Rico and moved back to Maryland in September of 2003, only to purchase and consume it again in January of 2004 when he took an assignment that required him to return to Puerto Rico to arbitrate administrative hearings on behalf of the Department of Agriculture in his capacity as Administrative Law Judge." It reasons:

> "Although the Respondent's rehabilitation may be progressive and his desire to overcome his addiction sincere, there is no guarantee that the Respondent will have any future set-backs. A sanction for an indefinite suspension will require the Respondent to petition the Court for reinstatement, and thus reserve to the Court the discretion to review the respondent's fitness for reinstatement while not placing any specific limitations to the Respondent as to when he may reapply for reinstatement."

The sanction imposed by the Court in *Gilbert* is inappropriate, the petitioner says, because Gilbert was found to have violated only Rule 8.4(d) and because the record did not reveal that the misconduct was directly related to the practice of law. By way of contrast, the petitioner points out that "the Respondent not only committed the misconduct while on assignment as an Administrative Law Judge, but also with the use of

---

8. Although the petitioner does not do so explicitly, considering its reliance on it in arguing against the sanction imposed in *Attorney Griev. Comm'n v. Gilbert,* 356 Md. 249, 739 A.2d 1 (1999), we assume that it also distinguishes *Attorney Griev. Comm'n v. Black,* 362 Md. 574, 766 A.2d 119 (2001) on the basis that the respondent engaged in the prohibited conduct while on agency assignment and used government financed property while doing so.

property paid for on behalf of and by the federal government for business purposes."

In support of his recommendation that he be given a reprimand, the respondent emphasizes the purpose of attorney discipline, "to protect the public and maintain the public's confidence in the legal profession rather than to punish the attorney," *citing Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 388, 773 A.2d 463, 470 (2001), and the duration—the respondent's rehabilitation efforts began, he asserts, within weeks of his arrest and has extended to date—and quality— the respondent has had 56 random urinalyses without a positive and he has attended "approximately 1000 formal meetings of various twelve-step programs"—of his rehabilitation efforts. Terming them a success, he notes that his prognosis has been characterized as "very good" by his treating psychologist, "very good" by the forensic psychiatrist to whom he was referred by Bar Counsel, and "excellent" by the Assistant Director of the Maryland State Bar Association Lawyer Assistance Program.

Moreover, the respondent submits:

"A significant factor which distinguishes this matter from any other reported decision is that Mr. Holt has not practiced law at any time in the State of Maryland in the more than two-years since his arrest in January 2004. Mr Holt was not in the practice of law at the time this matter arose, therefore upon his resignation from employment with the federal government he was effectively self-suspended. He had no meaningful opportunity to find employment while this matter was pending. No employer or potential client would hire him to perform legal work if some period of suspension could occur during the course of his employment. Therefore, any suspension which this Court might impose can only be viewed as unnecessarily punitive."

The respondent reads *Gilbert* and *Black* as standing for the proposition that "an attorney who is using a controlled substance is likely to be impaired and therefore unfit to represent clients or the public thereby causing the client or the public to

lose respect for the administration of justice." Noting that the converse also is true, the respondent rejects the argument advanced by the petitioner that it makes a difference that the misconduct occurred while the respondent was on assignment as an administrative law judge and involved the use of property paid for, in part by government funds. "There has never been," he maintains, "any suggestion of actual harm to any client or the public that resulted from Mr. Holt's misconduct in addition to the regrettable circumstance of skewing the public's appreciation for the administration of justice."

■■■■ The respondent is correct, the purpose of attorney discipline is not the punishment of the erring attorney, rather, it is for the protection of the public. *See Attorney Griev. Comm'n v. Brown*, 353 Md. 271, 295, 725 A.2d 1069, 1080 (1999); *Attorney Griev. Comm'n v. Awuah*, 346 Md. 420, 435, · 697 A.2d 446, 454 (1997); *Attorney Griev. Comm'n v. Hamby*, 322 Md. 606, 611, 589 A.2d 53, 56 (1991). That is also an important consideration when determining the appropriate sanction for the possession of cocaine, *see, e.g., In the Matter of the Discipline of Johnson*, 488 N.W.2d 682 (S.D.1992). In *Gilbert*, we reviewed other important factors affecting sanction:

> "[T]he courts have been, and are, sensitive to an attorney's effort at treatment and rehabilitation. See e.g., *[Discipline of] Jeffries*, 500 N.W.2d [220,] 225–26 (S.D.1993); *[Florida Bar v.] Temmer*, 632 So.2d [1359,] 1360 (Fla.1994); *People v. Ebbert*, 873 P.2d 731, 733 (Colo.1994); *[Columbus Bar Ass'n v.] Baker*, 72 Ohio St.3d 21, 647 N.E.2d 152, 152–53 (1995); *[In the Matter of] Gooding*, 260 Kan. 199, 917 P.2d 414, 419 (1996). Another important consideration is the attorney's prior disciplinary history. It is also an important consideration whether the use of the drug is directly connected to the attorney's practice of law. *[People v.] Madrid*, 967 P.2d 627, 628 (Colo.1998) (three year suspension when the attorney took cocaine as fee for services)."

356 Md. at 254–55, 739 A.2d at 4. While the possession of cocaine while serving as a judicial officer is extremely serious

and merits a substantial sanction, *see, e.g., People v. Stevens,* 866 P.2d 1378, 1379 (Colo.1994) (suspending lawyer for one year and one day for purchasing $25 worth of crack cocaine while serving as a judicial officer), a case in which there is a close connection between the cocaine and the practice of law has been held to be more serious. *Madrid,* 967 P.2d at 628 (acceptance of one ounce of cocaine as payment for legal services from a person believed to be a client facing drug charges resulted in a three year suspension).

As in *Black,* under the totality of the circumstances, we agree with the petitioner and, therefore, accept its recommendation that an indefinite suspension, rather than a reprimand or even the more modest sanction imposed in *Gilbert,* is the appropriate sanction. Also, as in *Black,* we will not delineate specific conditions of reinstatement, except the payment of costs, a condition in any event, whether stated or not, preferring to reserve to ourselves the broadest discretion to review, at the time of application, the respondent's fitness for reinstatement.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LESLIE B. HOLT.

RAKER and BATTAGLIA, JJ., dissent.

RAKER, J., dissenting, in which BATTAGLIA, J., joins:

I would disbar respondent. Respondent was an administrative law judge, on assignment to Puerto Rico. He was convicted in the United States District Court for the District of Puerto Rico of aiding and abetting the possession of cocaine. The record reflects that in his hotel room, paid for by the United States government, F.B.I. agents found thirty-one vials filled with cocaine, plastic and glass pipes, metal spoons, and plastic baggies with residue. He purchased the controlled

dangerous substances in a rented vehicle, paid for by the government. Canon 2A of the Maryland Code of Judicial Conduct provides as follows:

"A. A judge shall avoid impropriety and the appearance of impropriety. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the **impartiality** and integrity of the judiciary."

Respondent certainly did not respect the law nor did he act in a manner to promote public confidence in the integrity of the judiciary.

Sanctions in attorney discipline cases have multiple purposes and justifications. Protection of the public is one purpose. We have also pointed out repeatedly that another purpose is to maintain the integrity of the legal profession. *See, e.g., Attorney Griev. Comm'n v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Griev. Comm'n v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999). When an officer of the court, in the role of an administrative law judge, while on assignment, buys and uses cocaine, the administration of justice is prejudiced and the confidence of the public in the judicial system is seriously impaired. The integrity of the legal profession is greatly harmed.

Although this Court affords great weight to the recommendation of Bar Counsel, ultimately it is the responsibility of this Court to determine the sanction that should be imposed. Disbarment is the appropriate sanction in this case.

Judge BATTAGLIA has authorized me to state that she joins in the views expressed in this opinion.