38 A.3d 390

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Jude AMBE.**

**Misc. Docket AG No. 6, Sept. Term, 2011.**

Court of Appeals of Maryland.

Feb. 22, 2012.

100

Dolores O. Ridgell, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Herbert Alan Dubin, Esq., Rockville, MD, for respondent.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

DALE R. CATHELL (Retired, specially assigned), J.

On March 17, 2011, the Attorney Grievance Commission of Maryland (the Commission) filed a Petition for Disciplinary or Remedial Action in which it asserted that Jude Ambe, Respondent, violated Maryland Rules of Professional Conduct 5.5, 7.1, 8.1,[1] and 8.4.[2, 3] The Petition included the following assertions:

1. The Respondent was admitted to practice in the State of New York on or about 2009.

2. Respondent is not now, and has never been, a member of the Bar of the Court of Appeals of Maryland.

3. During times relevant to this matter, Respondent maintained an office for the practice of law in Montgomery County, Maryland.

\* \* \*

5. On or about November 9, 2009,[4] Respondent sent a letter to State Farm Insurance on behalf of a client in a

---

**1.** Although the Commission's petition identified an alleged violation of both 8.1(a) and (b), Bar Counsel did not pursue the 8.1(b) charge.

**2.** The relevant portion of these rules are quoted in the hearing judge's "Proposed Findings of Fact and Conclusions of Law." *Infra* at pp. 111–22, 38 A.3d at 398–404.

**3.** Bar counsel asserts that this case began as some other matter, presumably someone brought it to Bar Counsel's attention that Mr. Ambe was practicing law in Maryland. In any event, this record does not disclose that any of Mr. Ambe's immigration clients (that he attempted to help and, in doing so, practiced in an area forbidden to him) filed complaints and apparently, other than Bar Counsel, there are no complainants. Neither does the record disclose that any of his immigration clients were harmed by his attempts to assist them.

**4.** The record is not clear as to when Respondent opened a Maryland office in order to practice immigration law in the federal system, but it was as early as November 9, 2009. All of the allegations of the unauthorized practice of law in Maryland occurred subsequent to that date and prior to sometime in June of 2010. In June of 2010, after he was aware of the unauthorized practice of law issue, he did send at least two letters to clients withdrawing his representation. The letterhead he used on those two instances was the same improper letterhead he had used initially. While withdrawing one's representation is a form of practicing law, it is a *de minimus* form when the intent is to withdraw from the unauthorized practice of law.

personal injury matter. This letter included a misrepresentation[5] that Respondent was authorized to practice law in the State of Maryland.

6. On or about December 30, 2009 the Respondent sent a letter to Allstate Insurance on behalf of a client in a personal injury matter. This letter included a misrepresentation that Respondent was authorized to practice law in the State of Maryland.

7. On or about April 19, 2010, Respondent sent a letter to State Farm Insurance on behalf of a client in a personal injury matter. This letter contained a misrepresentation that Respondent was authorized to practice law in the State of Maryland.

8. On or about May 6, 2010, Respondent sent a letter to State Farm Insurance on behalf of a client in a personal injury matter. This letter contained a misrepresentation that Respondent was authorized to practice law in the State of Maryland.

9. During times relevant to this matter, Respondent was engaged in the unauthorized practice of law in Maryland.

10. During times relevant to this matter, Respondent made false and misleading communications about himself and/or his services.

11. On or about March 23, 2010, Respondent falsely represented to Bar Counsel that he would use letterhead that reflected that he was not admitted to practice law in Maryland and that his practice was limited to immigration matters.

12. On or about August 3, 2010, Respondent was sent a letter by Bar Counsel. This letter included a lawful demand for information. Respondent failed to Respond to Bar Counsel's request for information.

---

5. The letters actually permitted an inference that he was authorized to practice law by a combination of his letterhead and the content of the letters. No direct statement, i.e., "I am authorized to practice law in Maryland" or "licensed in Maryland" were ever made.

On March 18, 2011, this Court "ordered ... that the charges against Respondent be heard and determined by Judge Steven G. Salant [the hearing judge] of the Sixth Judicial Circuit in accordance with Maryland Rule 16–757[.]" Judge Salant held an evidentiary hearing on September 15, 2011. After the conclusion of the proceedings below, Judge Salant filed the following findings of fact and proposed conclusions of law:

### Background

The Respondent, Jude Ambe, received a LLM degree from the American University School of Law in 2008. Respondent was not eligible to take the Maryland Bar Exam in 2009 because he does not have a JD degree. Instead, Respondent took the New York Bar Exam, passed, and was admitted to practice in the State of New York in February 2009. Respondent is not, and has never been, a member of the Bar of the Court of Appeals of Maryland.

Since his admission to the New York Bar, Respondent has maintained a law office at 8121 Georgia Avenue, Silver Spring, Montgomery County, Maryland. According to Respondent, the office is maintained solely for the practice of immigration law. Respondent does not maintain a law office in New York or any other jurisdiction. Respondent's wife occasionally practices as part of Respondent's firm. She, like Respondent, is admitted to the New York Bar and practices immigration law. No other lawyers practice as part of his firm. Prior to March 2010, Respondent used letterhead for his practice which read:

THE LAW OFFICES OF AMBE & ASSOCIATES(ATTORNEY'S & COUNSELORS–AT–LAW) 8121 GEORGIA AVENUE, SUITE 340 SILVER SPRING, MD 20910 TEL: 301–326–2723 FAX: 301–326–2739

Bar Counsel received a complaint, separate from the present matter, against Respondent in December 2009. In response to Bar Counsel's request for a written response, Respondent sent a comprehensive letter to Bar Counsel addressing the complaint, dated January 1, 2010. The

response was not on Respondent's letterhead and was written in a memorandum type format.

On February 23, 2010, Bar Counsel wrote to Respondent and, among other things, stated that: "since you are not a member of the Maryland Bar, if your practice is limited only to immigration matters then your letterhead and any signs must indicate that you are a member of the New York Bar, specifically state that you are not a member of the Maryland Bar, and that your practice is limited only to federal immigration matters. Therefore it may be that you are holding yourself out as able to practice law in Maryland without restrictions, and therefore, it may be necessary to investigate whether you have been engaged in the unauthorized practice of law, and seek an injunction." Bar Counsel also asked Respondent to respond further.

On March 3, 2010, Respondent wrote back to Bar Counsel, again in the form of a memorandum. In his correspondence Respondent assured Bar Counsel that he was aware of the restrictions on his practice and that his practice was limited to immigration matters. Like his earlier response, Respondent's March 3rd correspondence was not on letterhead.

On March 11, 2010, Bar Counsel requested a copy of Respondent's letterhead. Respondent complied, sending a copy of his letterhead, which Bar Counsel received on March 16, 2010. Respondent's second letterhead read:

THE LAW OFFICES OF AMBE & ASSOCIATES (ATTORNEY'S & COUNSELORS–AT–LAW)—ADMITTED IN NEW YORK. (PRACTICE OUTSIDE THE STATE OF NEW YORK IS LIMITED TO IMMIGRATION MATTERS ONLY). 8121 GEORGIA AVENUE, SUITE 340 SILVER SPRING, MD 20910 TEL: 301–326–2723 FAX: 301–326–2739

On March 18, 2010, Bar Counsel wrote to Respondent indicating that respondent's letterhead must "specifically state 'not admitted in Maryland.'" Again, Respondent complied, sending an updated version of his letterhead, which Bar Counsel received on March 23, 2010. The third letter-

head added the text "not admitted in Maryland" per Bar Counsel's request. Bar Counsel closed the original complaint against Respondent on May 3, 2010.

In June 2010, State Farm Insurance contacted Bar Counsel about the Respondent and provided copies of a number of documents received from and sent to Respondent. These documents related to claims received by State Farm from three claimants identified as: Susan Ngwese, Celestine Ngwa, and Brigitte Nsanguet (also referred to as Brigitte Edimo). State Farm had received correspondence on the original Ambe & Associates letterhead sent in furtherance of claims for these individuals. Later, Bar Counsel received documents from Allstate Insurance pertaining to another claimant, Daisy Epie (also referred to as Dessy–Liza Epie). These documents included a letter of representation on the original Ambe & Associates letterhead on behalf of Daisy Epie.

**Nsangueti/Edimo**

State Farm received a letter dated November 9, 2009 on the original Ambe & Associates letterhead concerning "client" Brigitte Nsanguet and requesting that an initial settlement offer be sent to the Respondent. The letter informed State Farm that the client had completed treatment in connection with her claim and that copies of all medical bills, treatment notes, and lost wage verification were being submitted so that the claim could be evaluated. This letter was written on Respondent's original letterhead that did not include language disclosing the restrictions on Respondent's practice. During trial, Respondent acknowledged that he knew this letter was sent and authorized his non-lawyer assistant to send the letter.

State Farm issued a check for $3,222.22 payable to "Brigitte N. Edimo & Jude Ambe, her attorney" dated January 25, 2010. Respondent's office address appeared on the check and Respondent acknowledged that he received the check, that Nsanguet/Edimo endorsed the check, and that he then endorsed the check. Respondent deposited the check to either his personal or operating account, kept

$1,000 and returned the remainder to Nsanguet/Edimo. During the trial, Respondent indicated that the $1,000 was owed to him for representing the client and the client's family in an immigration matter and that the client owed him more money even after that payment.

**Ngwese and Ngwa**

State Farm received a demand letter dated April 19, 2010 on the original Ambe & Associates letterhead concerning injuries to Susan Ngwese. Shortly thereafter, State Farm received a demand letter dated May 6, 2010 on the original Ambe & Associates letterhead concerning injuries to Celestin Ngwa. Finally, State Farm received two letters dated June 17, 2010 on the original Ambe & Associates letterhead indicating that Ambe & Associates no longer represented Susan Ngwese or Celestin Ngwa. None of the letters sent to State Farm on Ambe & Associates letterhead contained the language noting practice limitations, stating "admitted in New York," or stating "not admitted in Maryland."

**Epie**

Allstate Insurance received a demand letter dated December 30, 2009 on the original Ambe & Associates letterhead concerning "our client" Daisy Epie. The letter confirmed that "we [Respondent's firm] are counsels" for the claimant and indicated that, if further information was desired the undersigned, Respondent, should be contacted. Respondent later acknowledged that it was his intent to act as legal representative for Ms. Epie, who was a minor, for purposes of communicating with the insurance adjuster. Later, Allstate received two separate letters dated June 17, 2010 on the original Ambe & Associates letterhead indicating that Ambe & Associates no longer represented Epie. Evidence produced at trial by Bar Counsel detailed a number of phone conversations between Respondent and Allstate representatives. An April 7, 2010 entry indicated: "Spoke to Atty Ambe @ 240–498–0285—still requesting profile and injury info on this claim. He is not in the office (today, he said he is out of town and won't be back until next Wednesday.) He asked that I c/b then." An entry for

April 19, 2010 stated: "Spoke briefly to Atty Ambe who promised to c/b later today—he was in a meeting and unable to give me profile/injury info and treatment status for this claim. . . ." On May 18, 2010, Allstate "called and spoke to Jude atty office—240-498-0285, he said his assistant handling file is John at 240-604-6547."

**Investigation and Trial**

On July 27, 2010, Respondent met with Sterling Fletcher, an investigator for Bar Counsel. The meeting took place at Respondent's office on Georgia Avenue in Silver Spring. During the meeting, Fletcher observed a sign for Respondent's law firm that did not disclose that Respondent was not admitted to practice in Maryland and/or that his practice was limited to immigration matters. Respondent testified at trial that at the time of the meeting with Fletcher, he had requested the building manager change the sign. Further, Respondent indicated that the sign had been removed by the time of the trial and he was waiting for an updated sign that disclosed the limitations on his practice.

In the meeting, Respondent told Fletcher that he knew he was legally able to practice only immigration law in Maryland. Respondent also told Fletcher that he had handled personal injury cases but that, at the time he did so, he did not know he could not negotiate with the insurance company for his immigration clients. Respondent informed Fletcher that he learned he was mistaken about this when he received a letter from Bar Counsel in March 2010.

At trial, Respondent testified that he believed he could communicate with non-lawyers concerning motor vehicle tort claims for individuals who were already clients. To this end, Respondent testified that he authorized his non-lawyer assistant, John Epie, to send letters to State Farm and Allstate on behalf of Brigitte Nsanguet/Edimo and Daisy Epie, respectively. Respondent further testified that he ordered John Epie to withdraw Ambe & Associates from representation when he learned that he could not communicate with non-lawyers concerning motor vehicle tort claims.

During the meeting, Fletcher showed Respondent copies of the letters sent to State Farm on the original Ambe & Associates letterhead. At trial, Fletcher testified that Respondent answered "yes" when he was asked whether his signature was on each letter. In contrast, Respondent testified that during the meeting he simply acknowledged that it was his name on each of the letters but was not admitting it was his signature. Fletcher also testified that during the meeting, Respondent acknowledged representing Daisy Epie with regard to an auto accident case. Finally, Fletcher testified that during the meeting, Respondent stated that he did not know Kevin Tabe prior to Tabe's assumption of the Ngwa and Ngwese matters.

During trial, Fletcher noted that in his July meeting with Respondent, Respondent did not deny representing Ngwa or Ngwese. According to Fletcher, the Respondent did not mention that his non-lawyer assistant John Epie sent the letters without authorization; in fact, Fletcher indicated that the Respondent did not mention that he received assistance from John Epie. Respondent, in his testimony, stated that he did not represent Ngwa or Ngwese and instead, the letters were sent by John Epie, a part-time assistant, without Respondent's authorization.

John Epie testified at trial that he worked for Respondent on a case by case basis from March 2009 through September 2010. His services to Respondent's firm included providing research on country conditions for immigration cases. He also communicated with Allstate and State Farm Insurance on behalf of the Respondent's clients with auto accident claims. According to Epie, he had experience in auto accident cases from working for other lawyers.

Testimony from both the Respondent and Epie indicated that Respondent engaged Epie's services specifically because of Epie's past experience handling insurance claims arising from car accidents with another firm. At trial, Epie confirmed that he worked on the Brigitte Nsangue/Edimo and Daisy Epie [claims] at the direction of the Respondent. In contrast, Epie testified that he knew Ngwese and Ngwa

from the Cameroon immigrant community and, when he learned that they had been in auto accidents, he wrote to State Farm on their behalf on Respondent's letterhead. Epie was not sure that he told Respondent he was doing this and it was not clear that he obtained Respondent's express authorization to tell the clients and State Farm that the Ambe & Associates firm represented Ngwese and Ngwa.

Both the Respondent and Epie testified that the Respondent did not have preprinted letterhead. Instead, Respondent relied on a computer-based template to generate the letterhead used for his firm's correspondence. Epie used his own computer for work done for Respondent and Epie's computer had the [original Ambe & Associates letterhead template] stored on it. Respondent and Epie testified that some time after Bar Counsel contacted the Respondent, Respondent told Epie to change the letterhead template to the third version, the one approved by Bar Counsel. Both Respondent and Epie testified that Epie had failed to update the letterhead stored on his computer. Epie did not explain why he failed to do so.

Kevin Tabe, a member of the Maryland Bar, testified that he knew both Respondent and Epie prior to May/June 2010. Specifically, Tabe testified that he had known the Respondent since 2008 when they met at a law firm. Tabe went on to testify that since 2008, he played soccer with the Respondent. According to Tabe, in May or June 2010, he was contacted by John Epie and asked to take over the representation of Ngwa and Ngwese. At that time, Tabe contacted the clients and they agreed to the representation. Tabe was then provided with the files. On June 9, 2010, Tabe sent letters of representation to State Farm. He received a call from State Farm and was informed that another attorney was already of record. Tabe then spoke to Respondent and asked him to withdraw his appearances in the Ngwa and Ngwese cases. Respondent agreed to do so. Respondent also told Tabe that Epie had sent letters to State Farm on behalf of Ngwa and Ngwese without his knowledge.

## Conclusions of Law

..... This Court finds that Respondent violated Maryland Rules of Professional conduct 5.5, 7.1, and 8.4. This Court also finds that Bar Counsel failed to show by clear and convincing evidence that Respondent violated Rule 8.1....

It is undisputed that the Respondent is not, and has never been, a member of the Maryland Bar, licensed to practice state tort law in the State of Maryland. There is no dispute that Respondent was responsible for the four personal injury claims that he initiated either by himself or through his agent, John Epie. Both parties agree that John Epie sent demand letters to State Farm on behalf of clients Susan Ngwese and Celestin Ngwa on Ambe & Associates letterhead, while working as an assistant to the Respondent. Moreover, there is no dispute that the Respondent himself engaged in settlement negotiations and reached a settlement agreement with State Farm regarding Brigitte Nsangue/Edimo. Finally, it is undisputed that the Respondent himself had repeated contacts with Allstate on behalf of Daisy Epie.

### MRPC 5.5

Rule 5.5 provides [in relevant part] that:

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

*    *    *

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

There is clear and convincing evidence that the Respondent violated Rule 5.5(a) by representing clients in Maryland state tort law cases while not licensed to practice law in Maryland. Maryland's Business, Occupations, & Professions Article, §§ 10–101 and 10–206 enunciate the scope of

Respondent's authority to practice law in Maryland. Section 10–206(a)(1) establishes that "before an individual may practice law in the State, the individual shall ... be admitted to the Bar." Section 10–206 enumerates a number of exceptions to this requirement but none of them are applicable in this case. Section 10–101(h)(2) defines the following acts as "practicing law": "preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or giving advice about a case that is or may be filed in court."

It is undisputed that Respondent's actions constituted the practice of law under § 10–206 and, consequently, there is clear and convincing evidence that the Respondent violated Rule 5.5(a). Specifically, Respondent drafted, or had drafted under his name, demand letters seeking to settle cases arising from four separate state tort claims that could be filed in court. Also, Respondent gave advice to Daisy Epie and Brigitte Nsanguet/Edimo about state tort claims that may be filed in a Maryland court. Those acts constitute the practice of law pursuant to § 10–101 and thus Respondent violated § 10–206(a)(1) because he was not admitted to the Bar of Maryland prior to engaging in those actions.

Respondent's contention that he did not know such action constituted the practice of law does not affect the analysis as to whether the Respondent violated the rule. Under Maryland law, "[c]laimed ignorance of ethical duties ... is not a defense in disciplinary proceedings." *Attorney Grievance Commission v. Awuah,* 346 Md. 420, 435 [, 697 A.2d 446, 454] (1997). Based on Maryland law, Respondent was expected to know the limitations on his law practice and the fact that he could practice federal immigration law in Maryland did not mean that he could practice state tort law.

Moreover, after Respondent was informed that his practice in Maryland had to be limited to federal immigration matters he continued to work on at least one of the Maryland tort law cases. Specifically, phone records presented by Bar Counsel indicate that well after Respondent was informed of the limited scope of his practice in Maryland,

Respondent engaged in a number of conversations with Allstate on behalf of Daisy Epie. On February 23, 2010, Bar Counsel explicitly warned Respondent that his practice in Maryland must be limited to federal immigration matters. On March 3, 2010 Respondent informed Bar Counsel that he was aware of the limitations on his practice. Despite Respondent's assurances, he continued to engage in practicing state tort law, as Allstate's records show three communications with the Respondent regarding Daisy Epie's account after March 3, 2010. This undermines Respondent's claim that he was simply unaware on the limitations on his practice and instead shows that Respondent actively ignoring of those limitations.

There is also clear and convincing evidence that Respondent violated Rule 5.5(b)(2) by failing to clearly indicate on his business cards that he was not licensed to practice law in Maryland. Bar Counsel's first interaction with the Respondent was an extensive back-and-forth concerning what specific language the Respondent had to provide on his "letterhead and any signs." Despite Bar Counsel's thorough review and eventual approval of specific language that the Respondent must use, as of the trial, the Respondent was still not in compliance with Bar Counsel's request. Specifically, at trial Respondent introduced a copy of his business card which did not contain the required language "not admitted in Maryland" and a statement showing that Respondent's practice outside of New York was limited to immigration matters. For all these reasons, this Court finds by clear and convincing evidence that the Respondent violated Rule 5.5 by engaging in the unauthorized practice of law and holding out to the public that he was authorized to practice law in Maryland.

## MRPC 7.1

Rule 7.1 provides:

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Maryland Lawyers' Rules of Professional Conduct or other law. . . .

There is clear and convincing evidence that Respondent made false and misleading communications in violation of Rule 7.1(a) and (b) by failing to disclose the limitations on his practice. Rule 7.1 requires out-of-state attorneys practicing federal law in Maryland to disclose that the attorney's practice is limited to the federal matter and that the attorney is not authorized to practice law in Maryland. *See Attorney Grievance Commission v. Harris–Smith,* 356 Md. 72, 86 [, 737 A.2d 567, 575] (1999) (finding a violation of Rule 7.1 where a business card gives a Maryland address and does not advise prospective clients that the lawyer is not admitted to practice in Maryland); *Attorney Grievance Commission v. Brown,* 353 Md. 271, 290 [, 725 A.2d 1069, 1078 (1999) ] (holding that failure to state that an out-of-state attorney is not licensed to practice in Maryland on letterhead is a violation of Rule 7.1 because clients could be misled that they are receiving representation from the out-of-state attorney).

As discussed above, at trial Respondent introduced into evidence a copy of the business card that he was using at the time of the trial that did not contain any of the language showing the limitations on his practice as required under Rule 7.1. Respondent's business card fails the standard set forth in *Harris–Smith* because his clients would not know from his business card that he is not admitted to practice in Maryland. Moreover, testimony at trial showed that even after Respondent's extensive discussions with Bar Counsel, either Respondent or his agent, John Epie, sent correspondence to State Farm on letterhead that did not comply with the requirements of Rule 7.1. This fails to satisfy the

requirements from *Brown* because clients could have been misled by the language on Respondent's letterhead. For all these reasons, the Court finds by clear and convincing evidence that the Respondent's business card and letterhead violated Rule 7.1.

## MRPC 8.1

Rule 8.1 provides in part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact. . . .

There is not clear and convincing evidence that the Respondent violated Rule 8.1(a) through his interactions via mailed correspondence with Bar Counsel because he did not knowingly make false statements of material fact. In his March 3, 2010 letter to Bar Counsel in response to an inquiry arising from a disciplinary complaint, Respondent assured Bar Counsel that he was aware of the limitations on his practice and that his practice was limited to immigration matters. Where an attorney's inexperience or carelessness leads to false representations, those false representations are not per se knowing or intentional. *See Attorney Grievance Commission v. Ward*, 394 Md. 1, 27 [, 904 A.2d 477, 492] (2006).

Respondent's main contention throughout the trial was that he was not aware that his interactions with State Farm and Allstate constituted the practice of law. Bar Counsel presented no evidence to indicate that when Respondent corresponded with Bar Counsel, that the Respondent knew that his actions constituted the practice of law, and presented no evidence that Respondent knew that he could not negotiate with State Farm or Allstate representatives on behalf of clients prior to his interactions with Bar Counsel. Thus, even assuming arguendo that Respondent made false statements of material fact in his letters to Bar Counsel,

there was no clear and convincing evidence presented that he knowingly made those false statements of material fact.

Moreover, there is not clear and convincing evidence that Respondent knowingly made a false statement of a material fact in connection with a disciplinary investigation through his interactions with Mr. Fletcher. There is clear and convincing evidence that the Respondent knowingly made a false statement Specifically, during his meeting with Fletcher, Respondent claimed that he did not know Kevin Tabe before Tabe took over the Ngwa and Ngwese cases. However, this assertion was proven false when Tabe testified that he knew both the Respondent and the Respondent's legal assistant before the May and June 2010 incidents occurred. Tabe testified that he had known the Respondent since 2008 and, in fact, the two played soccer together.

However, there is not clear and convincing evidence that Respondent's relationship with Kevin Tabe is a material fact "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, [492 A.2d 608, 614] (1985). Bar Counsel presented no evidence that whether the Respondent knew Tabe prior to Tabe's taking over the Ngwa and Ngwese cases would have any effect on the outcome of Bar Counsel's investigation into whether the Respondent was engaged in the unauthorized practice of law. Moreover, Bar Counsel presented no evidence that the fact that Respondent made a false statement about his relationship with Tabe affected their investigation. Consequently, there is no evidence to support a finding that the Respondent's relationship with Tabe was a material fact. For all these reasons, the Court finds that there was not clear and convincing evidence that the Respondent violated Rule 8.1(a).

\*     \*     \*

**MRPC 8.4**

According to Rule 8.4:
It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice . . .

## MRPC 8.4(b)

There is clear and convincing evidence that the Respondent violated Rule 8.4(b) by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer because, as discussed above, there is clear and convincing evidence that the Respondent violated Business, Occupations, and Professions Article §§ 10–206(a)(1). Also, there is clear and convincing evidence that Respondent violated Business, Occupations, and Professions Article § 10–601(a). Section 10–601(a) provides that "[e]xcept as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar."

As discussed above, Respondent practiced law in Maryland without being admitted to the Maryland Bar in violation of §§ 10–206(a)(1) and 10–601(a) by representing and advocating on behalf of Daisy Epie and Brigitte Nsangue/Edimo in connection with Maryland state tort law claims. The Court of Appeals has recognized that the unauthorized practice of law in violation of § 10–601(a) is a violation of Rule 8.4(b). *See, e.g., Attorney Grievance Commission v. Shryock,* 408 Md. 105, 122–23 [, 968 A.2d 593, 603] (2009) ("[D]ishonesty and unfitness to practice law, both, are reflected in [Respondent's] knowledge that he was not authorized to practice law and that there was no basis in fact or law for him to have believed that he was authorized

to act as he did."); *Attorney Grievance Commission v. Velasquez*, 380 Md. 651, 659 [, 846 A.2d 422, 426] (2004) ("Because unauthorized practice is a crime ... that conduct doubled as the commission of a crime reflecting on the respondent's fitness to practice and, when it is considered that the respondent failed to disclose his lack of licensure, it constituted conduct involving fraud, deceit or misrepresentation.").

Also, as discussed above, ignorance of the Maryland Rules of Professional Conduct does not excuse violations of those Rules. Respondent was expected to know the ethical limitations on the scope of his practice and he was expected to know that he could not practice state tort law if he was not licensed to practice law in Maryland. See [*Attorney Grievance Commission v.*] *Awuah*, 346 Md. [420,] 435 [, 697 A.2d 446, 454 (1997)]. For all these reasons, the Court finds by clear and convincing evidence that the Respondent violated Rule 8.4(b) by representing and advocating on behalf of clients without being licensed to practice law in Maryland.

## MRPC 8.4(c)

.... [T]here is clear and convincing evidence that after Bar Counsel informed the Respondent that his actions constituted the practice of law, the Respondent continued to work with Allstate regarding Daisy Epie's claim and the Respondent, or his agent, sent letters to State Farm and Allstate that did not disclose the limitations on his practice. Also, Respondent did not respond truthfully to Mr. Fletcher's investigation, particularly with regard to Respondent's relationship with Kevin Tabe. These actions constituted "conduct involving dishonesty, fraud, deceit, or misrepresentation" in violation of Rule MRPC 8.4(c) because knowingly failing to disclose the limitations on his practice constituted deceit and misrepresentation. Similarly, the Respondent's knowingly false response to Fletcher's questioning regarding Tabe constituted dishonesty and fraud. For all these reasons, the Court finds by clear and convincing evidence that the Respondent violated MRPC 8.4(c) via his communi-

cations with State Farm and Allstate after March 3, 2010 and his interactions with Fletcher.

## MRPC 8.4(d)

There is clear and convincing evidence that the Respondent engaged in conduct that is prejudicial to the administration of justice. Conduct that "reflect[s] adversely on [Respondent's] honesty, trustworthiness, and fitness as a lawyer ... [is] conduct prejudicial to the administration of justice." *Attorney Grievance Commission v. Potter*, 380 Md. 128, 152 [, 844 A.2d 367, 381] (2004). Specifically, conduct by an attorney that is "dishonest, deceitful, and criminal" violates Rule 8.4(d). *Attorney Grievance Commission v. Kapoor*, 391 Md. 505, 532 [, 894 A.2d 502, 518] (2006). Likewise, failure "to promptly, completely and truthfully respond to Bar Counsel's requests for information" constitutes a violation of Rule 8.4(d). *Attorney Grievance Commission v. Rose*, 391 Md. 101, 111 [, 892 A.2d 469, 475] (2006). In this case, there is clear and convincing evidence that the Respondent's behavior was dishonest and deceitful because he misled representatives of State Farm and Allstate by failing to indicate the limitations on his law practice. Even after Bar Counsel told the Respondent he had to clearly indicate the limitations on his practice and he could not practice state tort law in Maryland, the Respondent interacted with Allstate regarding Daisy Epie's claim and sent, or had his agent send, correspondence on his original letterhead to State Farm. Also, the Respondent's conduct was criminal because he engaged in the unauthorized practice of law, a misdemeanor pursuant to Maryland's Business, Occupations, & Professions Article §§ 10–206 and 10–601. Finally, Respondent failed to "completely and truthfully respond to Bar Counsel's requests for information" when he told Fletcher that he did not know Kevin Tabe before May/June 2010. For all these reasons, the Court finds by clear and convincing evidence that the Respondent violated Rule 8.4(d) by engaging in conduct that is prejudicial to the administration of justice.

## MRPC 8.4(a)

There is clear and convincing evidence that the Respondent violated Rule 8.4(a) because there is clear and convincing evidence that he violated Rules 5.5, 7.1, 8.1, and 8.4(b), (c), and (d). The Court of Appeals generally finds a violation of Rule 8.4(a) when the Respondent has violated multiple other Rules of Professional Conduct. *See Attorney Grievance Commission v. Gallagher,* 371 Md. 673, 710–11 [, 810 A.2d 996, 1018] (2002) ("As we have held that respondent has violated several Rules of Professional Conduct, he necessarily violated MRPC 8.4(a) as well."). In this case, this Court has found clear and convincing evidence that the Respondent has violated several Rules of Professional Conduct and consequently, it is appropriate to conclude that there is clear and convincing evidence that he has violated Rule 8.4(a). For all these reasons, the Court finds by clear and convincing evidence that the Respondent violated Rule 8.4(a) by violating a number of other rules within the Maryland Rules of Professional Conduct.

### Conclusion

Wherefore, it is this 26th day of October, 2011, found by the Circuit Court for Montgomery County, for the reasons set forth herein, that the Respondent, Jude Ambe, has violated the following Maryland Rules of Professional Conduct: Rules 5.5, 7.1, and 8.4. Moreover, it is found that the Respondent has not violated Maryland Rule of Professional Conduct 8.1.

The Respondent, in his "Exceptions to Findings of Fact and Conclusions of Law" took exception to Judge Salant's findings:

1. Failure to find that (a) the uncontroverted testimony from Respondent and his former assistant John Epie is that neither of them received any fee from any four personal injury claims, (b) the uncontroverted testimony from Kevin Tabe, Esquire, a member of the Maryland Bar, that neither Respondent nor his former assistant John Epie requested

any fee, payment, lien, quantum merit, for the two personal injury cases he received from them, and he paid them nothing, and (c) the uncontroverted testimony that neither Respondent nor his former assistant John Epie, alone or together, handled any other personal injury claim in any manner.

2. Respondent takes exception to the Findings of Fact . . . . that ". . . Respondent engaged Epie's services specifically because of Epie's past experience handling insurance claims arising from car accidents with another firm."

3. Respondent takes exception to the Findings of Fact . . . . relating to Respondent's relationship with Kevin Tabe, Esquire that fail to make it clear that Respondent did not know Kevin Tabe, Esquire was the attorney who took over the Ngwa and Ngwese cases. Although Respondent contends that Kevin Tabe, Esquire's testimony . . . that he did not know that any other attorney was representing Ngwa and Ngwese could be viewed as confirming that Respondent did not know that Kevin Tabe, Esquire was the attorney who took over those case[s] until Kevin Tabe, Esquire telephoned Respondent to request that Respondent withdraw his appearance from those cases, a clear finding could have avoided the need for the argument that such a misrepresentation of fact was not material.

4. Respondent takes exception that [the] Findings of Fact fail to find that John Epie had sent letters to State Farm on behalf of Ngwa and Ngwsese without Respondent's knowledge before Respondent was interviewed by Bar investigator, Mr. Sterling Fletcher.

5. Respondent takes exception to the Findings of Fact that (a) Respondent did not advertise, seek out, attempt to branch out, or in any other manner solicit legal work other than immigration matters, and (b) Respondent did not personally handle personal injury cases.

6. Respondent takes exception for the failure to find that: (a) the two personal injury claims Respondent admits to handling, Epie and Nsanguet/Edimo, were for existing immigration clients who requested his assistance for minor

auto accidents by correspondence with non-lawyer insurance company employees, and (b) if John Epie was not Respondent's contract employ with paralegal experience with personal injury cases, Respondent would not have taken those two cases.

## Exceptions to Conclusions of Law

7. Respondent takes Exception to the Conclusions of Law that Respondent violated Maryland Rules of Professional Conduct 5.5, 7.1, and 8.4.

8. Respondent takes[exception] to the Conclusions of Law that Respondent violated Rule 5.5(a) by representing clients in Maryland state tort law cases while not licensed to practice law in Maryland.

9. Respondent takes Exception to the Conclusions of Law that it is undisputed that "Respondent's actions constituted the practice of law ... (s)pecifically Respondent drafted, or had drafted under his name demand letters seeking to settle cases arising from four separate state tort claims that could be filed in court ... gave advice to Daisy Epie ..."

10. Respondent takes exception to the conclusions of law that Respondent actively ignored the limitations on his practice of immigration law.

11. Respondent takes exception to the conclusion of law that Respondent's business card did not contain any of the language showing the limitations on his practice as required under Rule 7.1.

12. Respondent takes exception to the Conclusions of law that Respondent violated Rule 8.4(b) by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer.

## Discussion

### I.

In *Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 952 A.2d 226 (2008), this Court stated that it has:

"[O]riginal and complete jurisdiction over attorney discipline proceedings" in Maryland. *Attorney Grievance Comm'n v. Adams*, 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998). Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. *Attorney Grievance Comm'n v. Zdravkovich*, 375 Md. 110, 126, 825 A.2d 418, 427 (2003). This Court gives deference to the hearing judge's assessment of the credibility of witnesses. *Id.* Factual findings by the hearing judge [that the Commission has satisfied its burden of persuasion] will not be interfered with if they are founded on clear and convincing evidence. *Attorney Grievance Comm'n v. Monfried*, 368 Md. 373, 388, 794 A.2d 92, 100 (2002). All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court. *Attorney Grievance Comm'n v. O'Toole*, 379 Md. 595, 604, 843 A.2d 50, 55 (2004).

*Id.* at 368, 952 A.2d at 235–36 (emphasis added).

## II.

### A.   Exceptions to Findings of Fact

As Petitioner correctly notes in its "Response to Respondent's Exceptions to the Findings of Fact and Conclusion of Law":

Four of Respondent's six exceptions are based on hearing Judge's failure to make some specific findings. *Exceptions* 1, 4, 5 and 6. Another exception was due to the perceived failure to make it clear that Respondent did not know that Kevin Tabe, Esquire was the attorney who took over the Ngwa and Ngwese cases. *Exceptions,* And one exception was to the hearing Judge's finding ... that Respondent engaged John Epie's services specifically because of Epie's past experience handling insurance claims arising from car accidents with another firm.

In *Attorney Grievance Commission v. Walter,* 407 Md. 670, 967 A.2d 783 (2009), while overruling the Petitioner's exception

to the hearing judge's finding that the Respondent had not violated MRPC 8.4, this Court stated:

> In its assessment of the credibility of witnesses, the hearing judge was entitled to accept—or reject—all, part, or none of the testimony of any witness, including testimony that was not contradicted by any other witness. . . .
>
> *       *       *
>
> There is nothing mysterious about the use of inferences in the fact-finding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts.
>
> *Robinson v. State*, 315 Md. 309, 318, 554 A.2d 395, 399 (1989). Hearing judges do the very same thing.
>
> [A] hearing judge's finding [is] not erroneous—clearly or otherwise—merely because [the hearing judge] did not find it appropriate to draw one or more "permissible inferences which might have been drawn from the evidence by another trier of the facts." *Hous. Opportunities Comm'n of Montgomery County v. Lacey*, 322 Md. 56, 61, 585 A.2d 219, 222 (1991).

*Id.* at 678–79, 967 A.2d at 788. *See also, Attorney Grievance Commission v. Palmer*, 417 Md. 185, 205, 9 A.3d 37, 49 (2010) ("While this Court conducts an independent review of the record developed below, a hearing judge's findings of fact generally will be accepted unless they are clearly erroneous").

Respondent took exception to Judge Salant's failure to find that no compensation was received by the Respondent or his assistant as a result of handling the four personal injury claims. However, the evidence clearly established that (1) Respondent received a settlement check from State Farm on January 25, 2010 in the amount of $3,222.22 on behalf of Brigitte N. Nsanguet/Edimo, and (2) the Respondent deposited the check to either his personal or operating account, kept $1,000, and returned the remainder to Nsanguet/Edimo. Furthermore, during the hearing, Respondent indicated that the $1,000 was owed to him for representing Nsanguet/Edimo and her family in an immigration matter. Whether the $1,000 was

received as compensation for handling an immigration claim or a motor tort, the evidence did not support a finding that the Respondent received "no compensation".

Respondent took exception to the finding that Respondent engaged Epie's services specifically because of Epie's past experience with another firm handling insurance claims arising from car accidents. However, during his deposition, the Respondent testified as follows:

Q [by Bar Counsel]: Well, if you gave, who if anyone, gave the clients legal advice with regard to their tort claim?

A [by Respondent]: Well, in [the Nsanguet] case it would have been myself and ... because like Mr. Epie had more experience in that field than I had because he had worked with Mr. Kume who is a Maryland attorney and does a lot of PI [Personal Injury] cases, ... so that's why I asked him to be the one to write to the adjusters and tell them whatever we could tell them on behalf of Ms. Nsanguet because he has experience in that field ...

Consistent with *Walter, supra,* Judge Salant was entitled to infer from this testimony that Respondent engaged John Epie's services, *in whole or in part,* because of Epie's past experience handling insurance claims.

Respondent took exception to Judge Salant's failure to "make it clear that Respondent did not know Kevin Tabe, Esquire [who] was the attorney who took over the Ngwa and Ngwese cases". However, at the hearing, Mr. Tabe testified as follows:

Q:  ... Did there come a time when Mr. Ambe contacted you about representing some of his clients?

A:  Yes.

Q:  All right. Explain for the Court how that came about.

\*     \*     \*

A.  Last year. I got a call from another guy by the name of John Epie. He informed me of some personal injury cases, and he asked if I was interested in handling those cases. I said yes, I was, and then he informed me that the

cases were coming from their office, which would have been Mr. Jude's office. So I had Mr. John Epie bring the files to me, if I remember correctly.

* * *

[The Witness] And once I got the files in my office I tried to enter my representation on the cases. The insurance company informed me that I could not, as Mr. Jude Ambe was already on the record. So I had to call him to withdraw his appearance. That's how I got into a conversation with him on the case. When he sent a letter to withdraw his appearance, than I continued on those cases.

Accordingly, this exception is overruled.

Respondent took exception to Judge Salant's failure to find that John Epie had sent letters to State Farm on behalf of Ngwa and Ngwese without the Respondent's knowledge before Respondent was interviewed by Bar Investigator Fletcher. The two letters at issue are "demand" letters, one dated April 19, 2010 written on behalf of client Ngwese, and the other dated May 6, 2010 written on behalf of client Ngwa. It is undisputed that both letters were sent before Respondent met with investigator Fletcher. Both letters, entered into evidence at the hearing, stated the following:

"THE LAW OFFICES OF AMBE & ASSOCIATES
(Attorneys & Counselors–At–Law)
8121 Georgia Avenue Suite 340
Silver Spring, MD 20910
Tel: 301–326–2723
Fax 301–326–2739

* * *

Dear . . . .
Please be advised that [the client] has completed treatment in connection with the above referenced claim. To enable you [to] evaluate her claim for bodily injuries, we are herein submitting for your review, copies of all medical bills/treatment notes and lost wage verificiation . . . .

* * *

Please review the above information and inform us of your initial settlement offer. Should you, however, desire any further information concerning the foregoing, please do not hesitate to contact us at our earliest convenience.

Sincerely,

/s/

Jude Ambe, Esq."

Both letters contained the Respondent's signature. On that basis, Judge Salant was entitled to draw the inference that Respondent did in fact have knowledge that the letters had been sent to State Farm and reject assertions to the contrary.

Respondent also argues that Judge Salant failed to find that he (Respondent) did not personally handle the personal injury cases. However, the Respondent specifically testified as follows:

Q: Did you give Brigitte Edimo legal advice about her accident claim?

A: In this case, yes, I did, because I would talk about her accident claim. Yes.

Q: All right. And Daisy Epie was a minor, correct?

A: Correct.

Q: Did you discuss with her parents her auto accident claim.

A: Yes, I did.

Q: And did you tell them whether or not you thought she had a right to be compensated for her damages, her financial damages?

A: We discussed the whole case based on whatever information they give us.

Q: All right. And the settlement that you got for Brigitte Edimo, did you negotiate with the insurance adjuster the amount of that settlement?

A: Yeah. They earlier offered to settle for, I think, 2,000 or something like that, and based on her time off from work that she missed and everything else, we argued and they give her, I can't remember what the actual fee was but 30

128

something hundred dollars, maybe about 35 or 3,400, something like that, about 3,000, I don't know 3,000 plus dollars.

Given that Respondent discussed at least three of the personal injury claims with his "clients" and negotiated a settlement on behalf of a client in one other, there is little merit to his assertion that he "did not personally handle [the] personal injury cases".

Finally, Respondent argues that Judge Salant should have found that (1) the two personal injury claims that he admitted to handling were for existing immigration clients, and (2) that he would have never taken those cases had it not been for John Epie's paralegal experience with personal injury cases. There is no merit to either of these exceptions. The bottom line is that Respondent was never allowed to practice any law or settle any claim in the State of Maryland other than claims in the United States District Court for the District of Maryland. Thus, whether the personal injury claim was brought to the Respondent by an existing immigration client as well as the Respondent's reasons for taking on (or not taking on) a personal injury case are not directly relevant in respect to Respondent's exceptions to the hearing judges findings and conclusions, although it may be entitled to some consideration in respect to this Court's sanction.

For all of these reasons, Respondent's exceptions to the hearing judge's findings of fact are overruled.

## B. Exceptions to Conclusions of Law

### (1) Rule 5.5(a)

In *Atty. Griev. Comm'n v. Hallmon*, 343 Md. 390, 397–98, 681 A.2d 510, 514 (1996), this court stated that it

... has always found it difficult to craft an all encompassing definition of the "practice of law." To determine what is the practice of law we must look at the facts of each case and determine whether they " ' "fall[ ] within the fair intendment of the term." ' " *In re Application of Mark W.*, 303 Md. 1, 8, 491 A.2d 576, 579 (1985) (quoting *Grievance Comm. v. Payne*, 128 Conn. 325, 329, 22 A.2d 623, 625 (1941)). The

purpose of Rule 5.5 "is to protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical, or irresponsible representation." *In re Application of R.G.S.*, 312 Md. 626, 638, 541 A.2d 977, 983 (1988). That "goal ... is achieved, in general, by emphasizing the insulation of the unlicensed person from the public and from tribunals such as courts and certain administrative agencies." *Id.*

To determine whether an individual has engaged in the practice of law, the focus of the inquiry should "be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *In re Discipio*, 163 Ill.2d 515, 645 N.E.2d 906, 910, 206 Ill.Dec. 654 (1994); *Louisiana State Bar Ass'n v. Edwins*, 540 So.2d 294, 299 (La.1989) ("Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer."). "Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Lukas v. Bar Ass'n of Montgomery County*, 35 Md.App. 442, 448, 371 A.2d 669, 673, cert. denied, 280 Md. 733 (1977) (quoting F.T. vom Baur, Administrative Agencies and Unauthorized Practice of Law, 48 A.B.A. J. 715, 716 (1962)).

*Id.* at 397–98, 681 A.2d at 514 (emphasis added). It is clear that the Respondent violated Rule 5.5(a) by representing clients in Maryland state tort law cases while not licensed to practice law in Maryland. In addition to sending two demand letters to State Farm on behalf of Ngwese and Ngwa requesting a settlement of their claims, the Respondent admitted at the hearing that he gave legal advice to Brigitte Edimo, settled her claim with State Farm, and received compensation from that settlement. The settlement of a claim requires or necessitates the application of legal knowledge and precedent. The Respondent had to evaluate Edimo's injuries, evaluate any settlement offer made by State Farm to determine its adequacy and offer at least a cursory review of the rights and

liabilities should the claim go into litigation, even if the Respondent had no intention of handling the claim himself. Accordingly, this exception is overruled.

### (2) Rule 7.1

Rule 7.1 states, in pertinent part, that a lawyer "shall not make a false or misleading communication about the lawyer or the lawyer's services". As Judge Salant correctly noted, Rule 7.1 requires out-of-state attorneys practicing federal law in Maryland to disclose that the attorney's practice is limited to federal matters and that the attorney is not authorized to practice law in Maryland. *See Attorney Grievance Commission v. Harris–Smith*, 356 Md. 72, 86, 737 A.2d 567 (1999) (finding a violation of Rule 7.1 where a business card gives a Maryland address and does not advise prospective clients that the lawyer is not admitted to practice in Maryland); *Attorney Grievance Commission v. Brown*, 353 Md. 271, 290, 725 A.2d 1069 (holding that failure to state that an out-of-state attorney is not licensed to practice in Maryland on letterhead is a violation of Rule 7.1 because clients could be misled that they are receiving representation from the out-of-state attorney).

The Respondent argues that Judge Salant erred in finding a violation of Rule 7.1 because (1) Respondent told his assistant, John Epie, to change the letterhead to the one "approved" by Bar Counsel, and John Epie failed to do so, and (2) that his business card did state that Respondent's practice was limited to "IMMIGRATION PRACTICE". Thus, the Respondent argues that when his card is considered "as is" by a person on the street, it is sufficient to give notice to the public that his practice is limited to immigration law. There is little merit for either of these contentions.

Maryland Rule of Professional Conduct Rule 5.3(b) states that a "lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer". Rule 5.3(c)(2) states that "a lawyer shall be responsible for conduct of such a person that would be

a violation of the Maryland Lawyers' Rules of Professional Conduct if engaged in by a lawyer if the lawyer . . . has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action". It is clear that the Respondent knew that his letterhead needed to be changed. Although the Respondent indicated that he gave Mr. Epie—his non-lawyer assistant—a flash drive with the new letterhead, the Respondent did not take any steps to ensure that Mr. Epie actually complied with his orders. The ultimate responsibility to ensure that the letterhead was in compliance with the Rules fell on the Respondent not on his non-lawyer assistant.

The Respondent's business card is also a violation of Rule 7.1. The card at issue states:

THE LAW OFFICES OF AMBE AND ASSOCIATES
(Attorneys & Counselors-at-law)
(Immigration Practice)
8121 Georgia Ave, Suite 340
Silver Spring, MD 20910
Tele: 240 498 0285
Fax: 301 650 9122
email *Jambe@ambelaw.com*
 *www.ambelaw.com*

Nowhere on this card does it state that the Respondent's practice is *limited* to immigration law. A layman might think that the Respondent is a Maryland attorney who *concentrates* in immigration matters as opposed to an attorney whose practice is limited to immigration matters. The card is somewhat ambiguous and fails to meet the requirements set forth in Rule 7.1 as well as the standards set forth in *Harris–Smith* and *Brown, supra.* Judge Salant correctly concluded that the business card in question violated Rule 7.1, and Respondent's exceptions are overruled.

### (3) **Rule 8.4(b)**

According to Rule 8.4(b), it is professional misconduct for a lawyer to commit a criminal act that reflects adversely

on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. The unauthorized practice of law is a crime. *Attorney Grievance Commission v. Velasquez,* 380 Md. 651, 659, 846 A.2d 422, 426 (2004) ("Because unauthorized practice is a crime ... that conduct doubled as the commission of a crime reflecting on the respondent's fitness to practice and, when it is considered that the respondent failed to disclose his lack of licensure, it constituted conduct involving fraud, deceit or misrepresentation"). *See also,* MD. CODE. ANN., Bus. Occ. Prof. § 10–606(3) (2010 Repl. Vol.) (unauthorized practice of law is a misdemeanor). We have already held that the Respondent engaged in the unauthorized practice of law by representing clients in Maryland state tort law cases without a license.

Nonetheless, the respondent's case is somewhat distinguishable from, yet at the same time similar to, that of *Harris–Smith, supra.* In that case, the hearing judge found that the lawyer had engaged in the unauthorized practice of law but failed to find a violation of rule 8.4(b). In overruling, Bar Counsel's exception to the judge's failure to make that finding we stated that:

> The tenor of the entire record is that Smith was attempting to conduct a bankruptcy practice in a lawful manner by limiting her court appearances to the federal district. That was a mistaken conclusion in light of *Kennedy* [*v. Bar Association of Montgomery County,* 316 Md. 646, 561 A.2d 200 (1989) ], which had been decided in 198[9], but a mistaken conclusion is not a violation of Rule 8.4(b). Further, there was uncontradicted and uncontroverted evidence that on more than one occasion an Assistant Bar Counsel had spoken to Smith by telephone, obtained from her samples of the Law Firm's letterhead and of her professional card, and that Smith heard nothing further.

*Harris–Smith,* 356 Md. at 87, 737 A.2d at 575. Respondent in the case *sub judice* was attempting to practice only immigration law, but then assisted immigration clients in state matters. In this case, however, the Respondent had been told by Bar Counsel on or about March 3, 2010 that his practice in

Maryland had to be limited to federal immigration matters, and the record indicates he, or someone under his supervision, continued to work on at least one of the personal injury cases for several months after being made aware of that limitation. There was a violation of the statute and at least a technical commission of a criminal offense. Accordingly, this exception is overruled.

## III. Sanction

The purpose of attorney discipline is the protection of the public, not the punishment of the erring attorney. *E.g., Attorney Grievance Comm'n v. Hill,* 398 Md. 95, 103, 919 A.2d 1194, 1198 (2007); *Attorney Grievance Comm'n v. Robertson,* 400 Md. 618, 642, 929 A.2d 576, 590 (2007); *Attorney Grievance Comm'n v. Holt,* 391 Md. 673, 682, 894 A.2d 602, 607 (2006). In determining what sanction will best serve that purpose, we have determined the facts and circumstances of the misconduct to be instructive. *E.g., Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 75, 930 A.2d 328, 347 (2007); *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 269, 920 A.2d 458, 465 (2007). Also important are the presence or absence of mitigating factors and the prior disciplinary history of the attorney, *see e.g., Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 31, 922 A.2d 554, 572 (2007); *Attorney Grievance Comm'n v. Wingerter,* 400 Md. 214, 224, 929 A.2d 47, 53 (2006).

The Respondent argues that the conduct complained of does not rise to the level of sanctions beyond a reprimand. The Petitioner disagrees noting that, among other thing, "the hearing judge's findings include conduct involving dishonesty, fraud, deceit or misrepresentation", and, therefore, "a reprimand would not be the appropriate sanction under these circumstances".[6]

---

6. In its original "recommendation of sanction", Bar Counsel suggested that disbarment be the appropriate remedy, however, this recommendation is absent in their "response", and thus it can be inferred that they have "backed off" from their original recommendation.

There appear to be several relatively recent cases involving the appropriate sanctions for attorneys who engage in the unauthorized practice of law. They include *Attorney Grievance Commission of Maryland v. Bradford Jay Barneys,* 370 Md. 566, 805 A.2d 1040 (2002), *Attorney Grievance Commission of Maryland v. Bridgette Harris–Smith,* 356 Md. 72, 737 A.2d 567 (1999) and *Attorney Grievance Commission of Maryland v. Erroll Donnelly Brown,* 353 Md. 271, 725 A.2d 1069 (1999). Additionally, there are two recent cases that we consider particularly relevant to our consideration of the sanction in this case: *Attorney Grievance Commission of Maryland v. Timur Z. Edib,* 415 Md. 696, 4 A.3d 957 (2010), and *Attorney Grievance Commission of Maryland v. Ephraim C. Ugwuonye,* 405 Md. 351, 952 A.2d 226 (2008).

We will first address the above cases involving instances of unauthorized practice of law violations. We note that the sanctions in the above three cases range from disbarment (*Barneys* ), indefinite suspension (*Brown* ) and a thirty-day suspension (*Harris–Smith* ). There are several differences in respect to the facts of those three cases and the facts in this case. In *Barneys* the attorney actually entered his appearance in five cases in the District Court and Circuit Court in Montgomery County, and, at the same time, was applying for admission to the Maryland Bar. One of the five cases in which he inappropriately entered his appearance was a case where he made misrepresentations to a bail bondsman in respect to protecting that entity's interests when he had no power to do so. Additionally, he specifically told Bar Counsel that he had only one Maryland client when he knew he actually had at least five. He also had not included any limiting language in any of his advertisements, letterheads, business cards, etc., which in any way informed prospective clients of any limitations on his ability, legally, to practice law in Maryland. In fashioning a sanction in *Barneys,* we first distinguished it from *Harris–Smith* in which we had imposed a thirty-day suspension:

"... only in *Harris–Smith* was the attorney spared disbarment. Her case, however is significantly different from

the others. The major difference is that she was the only attorney who never actually represented a client in a Maryland state court proceeding....

The second distinguishing factor of Respondent's case from *Harris–Smith*, is the absence here of a "federal overlay." The "federal overlay" factor is significant because it provides at least some plausible reason why an attorney might believe that he or she is within his or her rights in maintaining a practice or office in Maryland....

The third distinguishing factor between Respondent's case and *Harris–Smith* is that, unlike Respondent, Harris–Smith endeavored to practice law within her arguable jurisdictional limits...."

370 Md. at 589–90, 805 A.2d 1040.

In *Brown*, Mr. Brown entered into a law partnership with a Mr. Wilder, a Virginia attorney, knowing that Mr. Wilder was not admitted to the Bar in Maryland, and then assisted him in practicing in Maryland including inserting Mr. Wilder's name on the firm's letterhead and business cards without any limiting language, permitting Mr. Wilder to make an oral presentation to a Maryland administrative body on behalf of a Maryland client and affixing a signature block for Mr. Wilder on pleadings actually filed in court. Additionally, Mr. Brown and Mr. Wilder had been sanctioned by the federal court for filing suit where there was "no evidentiary basis" for doing so. Mr. Brown had paid $14,000 as his part of the sanction. In another case, Mr. Brown failed to adequately communicate with his client, made several false statements in a petition to withdraw his appearance in a case, which he presented to a trial judge, including falsely stating that he had an inherent conflict of interest when he did not. Additionally, Mr. Brown had already been suspended from the practice of law in the District of Columbia. He had also previously been suspended in Maryland. We said:

"... we find an indefinite suspension to be the appropriate sanction for respondent's conduct. The number of complaints before this Court are of great concern, as is

respondent's previous suspension by this Court for similar conduct. *See Attorney Grievance Comm'n v. Brown,* Misc. Docket (Subtitle BV) No. 47, 1995 Term, slip op. (Md. Apr. 9, 1997)."

353 Md. at 296, 725 A.2d 1069. We then indefinitely suspended Brown but with the right to reapply after one year.

In *Harris–Smith* the attorney was not admitted to the bar of Maryland but nonetheless from 1987 to 1993 maintained, along with a Maryland attorney, an office in Maryland. In 1994 she entered into a new partnership with an office in Maryland. Two other attorneys in this new practice were Maryland attorneys. She proffered that she only practiced bankruptcy law from the Maryland offices. When Bar Counsel began his investigation of the partnership, it was dissolved and Harris–Smith opened an office in the District of Columbia.

The charges against her were initially based on four complaints made against her by her clients. Later Bar Counsel filed the complaint that she was engaged in the unauthorized practice of law in Maryland. The trial judge found that while she was a partner in the Maryland firm, its advertisements included language that all of its attorneys were experienced in preventing foreclosures, personal injury cases, employment law and bankruptcy. Another advertisement never mentioned bankruptcy. The advertisements never attempted to notify the public that Harris–Smith's practice was limited to bankruptcy. The trial court found that she had held herself out as a Maryland attorney and had not disclosed that her practice was limited to bankruptcy law in the federal system. There were also advertisements in phone books asserting that in addition to bankruptcy law, she practiced in the areas of "Real Estate and Personal Injury". Neither the firm's letterhead nor her business card contained information advising the public that her practice was limited to bankruptcy.

In addition to the above transgressions, we found that Harris–Smith had acted as a screener for the Maryland law firm, initially interviewing prospective clients and referring

the non-bankruptcy clients to other attorneys in the firm. We said:

> Smith's federal exception defense in this case is that she "pinpointed" bankruptcy cases. Judge Rupp, however, found that Smith held herself out to the public as practicing law generally. The matters that came to her were analyzed by her to determine whether action in the Maryland District bankruptcy court was the proper cause of action. . . . . When Smith initially analyzed matters that came to her after holding herself out as practicing law in Maryland, Smith did not advise clients that she was limiting her legal representation to specific matters that were to be bankruptcy proceedings.

356 Md. at 83, 737 A.2d 567.

In respect to the unauthorized practice issues we overruled Harris–Smith's exceptions to the trial judge's findings.

As we indicated, there were additional complaints filed by clients in *Harris–Smith* unrelated to the unauthorized practice complaint filed by Bar Counsel that we addressed. We upheld the trial judge's determination that Harris–Smith had violated Rule 1.16 in respect to her failure to return an unearned fee to one client upon her withdrawal of representation of that client. We held that the hearing judge's determination "is not clearly erroneous". Another instance occurred when she was representing a Mr. Henry in a foreclosure and bankruptcy matter. She withdrew from the case, and it was later determined that a non-lawyer member of her staff had mailed her client list to a soliciting mortgage lender who then attempted to do business with the former client. The hearing judge determined that she had violated the provisions of Rule 5.3(b). We overruled her exception to that finding. Another adverse finding involved her failure to remit to a client the deposit she received in respect to a bankruptcy filing.

All of the sanction cases discussed above contained more serious infractions than those we perceive in the present case. Harris–Smith practiced Maryland law for over five years in a Maryland office without adequate safeguards limiting her

practice. Additionally, there were complaints by clients, that were upheld, as to sub-standard practices in respect to certain cases she did handle. Among other things, Brown had a prior suspension, had been sanctioned twice for improper conduct in cases and had actively and knowingly assisted an Virginia attorney to practice in Maryland. Barneys had actually entered his appearance in five cases in Maryland trial courts while beginning the process for application to the Maryland bar, had made actual misrepresentations to a bail bondsperson on behalf of a client and had not included any type of practice limitation language on any of his advertisement or solicitation papers.

■ Respondent's transgressions in the instant case are not as severe in nature as the transgressions in the above cases. He was a newly practicing attorney who never specifically solicited any clients on Maryland matters. It is uncontradicted that his various contacts with insurers in a settlement context originated with his immigration clients who sought his assistance in communicating with various insurers. He never entered his appearance in any Maryland court case and never assisted any other attorney in doing so. He did not screen cases for Maryland attorneys, and while on one occasion he retained $1000 from a settlement check, it is uncontradicted that it represented a sum owed him from that client in respect to an immigration matter. He has no prior record of being sanctioned. There are no allegations by clients that he failed to communicate or inadequately handled their cases or their money. In fact, there are no allegations or complaints by any clients that have been brought to the attention of the Court. There was no allegation that he directly acted deceitfully to clients or to any court.

The issue of criminal conduct giving rise to misconduct arose solely out of the charge that Ambe was practicing law without a license to do so in this state. While we uphold the trial court's findings in that regard because he was technically correct, we are mindful of what we said in *Harris–Smith* where the trial judge failed to categorize similar conduct as

being criminal in nature, and Bar Counsel filed exceptions to the hearing judge's failure to make such a finding. We said:

> Bar Counsel excepts to Judge Rupp's finding that Smith did not violate Rule 8.4(b) ("It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.") Bar Counsel argues that Rule 8.4(b) was violated because under BOP Section 10–606, it is a misdemeanor to violate BOP Section 10–601.
>
> Judge Rupp's finding is not clearly erroneous. The tenor of the entire record is that Smith was attempting to conduct a bankruptcy practice in a lawful manner by limiting her court appearances to the federal district. That was a mistaken conclusion ... but a mistaken conclusion is not a violation of Rule 8.4(b)....

356 Md. at 87, 737 A.2d at 575.

We shall consider what we said in *Harris–Smith, supra,* in the fashioning of our sanction.

We reprimanded an attorney who primarily practiced immigration law in our recent case of *Edib, supra.*[7] He was found to have failed to surrender papers to a former client and "failed to properly communicate with his client". We opined as to the appropriate sanction:

> Thus, the first factor we consider is the nature of the ethical duty breached.... Although Respondent's behavior here is not commendable, the ethical duty to surrender documents upon termination of representation is not as important in protecting the public as the misconduct in [*Attorney Grievance Comm'n v.*] *Fallin,* [371 Md. 237, 808 A.2d 791 (2002) ] which implicated a lawyer's duty to provide honest and competent representation.
>
> We consider next the lawyer's mental state of mind regarding the misconduct.... *Ugwuonye* made clear that, in fashioning a sanction, we should consider whether Re-

---

**7.** Most of the transgressions in that case took place in Virginia where Edib was not licensed to practice law.

spondent harbored dishonest motives. Although Edib may have withheld documents intentionally, he did not do so with dishonest or deceitful motive as regards his client. Thus, a less severe sanction is appropriate.

The third factor under *Ruddy*[8] is the extent of actual or potential injury caused by the lawyer. Bar Counsel does not allege that Respondent's failure to surrender documents caused any specific injury to Ms. Kismir....

The fourth factor we consider is if there are any mitigating or aggravating circumstances....

415 Md. at 719–722, 4 A.3d 957.

The situation in the case *sub judice* appears to be that of an inexperienced attorney [9] who became licensed in 2009 (in New York), and without any prior experience with lawyering in any jurisdiction, wanted to open a practice dedicated solely to the practice of immigration law. He got in trouble when he attempted to assist immigration clients in areas of the law he was not permitted to practice in this state. There is absolutely no evidence that he was attempting to solicit clients for representation in matters of Maryland law.

Respondent did violate Rule 5.5(a) by representing clients in Maryland state tort law matters while not licensed to practice law in Maryland. But, as we have indicated, it does not appear he actively solicited any clients in respect to Maryland issues as was the case in *Harris–Smith*. *See Harris–Smith,* 356 Md. at 75–76, 737 A.2d at 575. We also note that the Respondent's Rule 7.1 violations stemmed more from a lack of supervision and, perhaps, misplaced trust in his non-lawyer assistant than from any deliberate attempt to circumvent rules of professional conduct. Furthermore, we note that Judge Salant did not find a violation of Rule 8.1. Lastly, because

---

8. *Attorney Griev. Comm'n v. Ruddy,* 411 Md. 30, 981 A.2d 637 (2009).

9. While the record contains little evidence one way or the other, it is possible, if not probable, that Mr. Ambe, the clients involved here, the assistant and the attorney who replaced Respondent are all natives of the west African country of Cameroon.

Md. Rule 16–760(f) provides for the protection of the public by authorizing Bar Counsel to take further action against Respondent in the unlikely event that Respondent ever again engages in the unauthorized practice of law—the main charge for which these disciplinary proceedings were brought—we believe that the public is adequately protected by reprimanding the Respondent.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JUDE AMBE.**

HARRELL and BARBERA, JJ., concur and dissent.

HARRELL, J., concurring and dissenting, in which BARBERA, J., joins.

I agree with the Majority opinion's analysis and disposition of Respondent's exceptions; however, I disagree (most respectfully) with the Majority opinion's analysis of the appropriate sanction. I would impose a suspension of 30 days.

In its search for consistency in the imposition of sanctions through recourse to analogous cases, the Majority opinion distinguishes persuasively the facts and rule/code violations in Ambe's case from those in *Attorney Grievance Commission v. Barneys,* 370 Md. 566, 805 A.2d 1040 (2002); and *Attorney Grievance Commission v. Brown,* 353 Md. 271, 725 A.2d 1069 (1999), even though the unauthorized practice of law was a flagship issue in each. Maj. op. at 135–37, 38 A.3d at 412–13. I part company with the Majority opinion, however, in its rejection of *Attorney Grievance Commission v. Harris–Smith,* 356 Md. 72, 737 A.2d 567 (1999), the closest case in kind to the present one.

Ambe's situation shares with *Harris–Smith* the major contextual attribute of a lawyer with an office in Maryland, although not admitted in Maryland, practicing law in Maryland and using the "federal overlay" (claiming to maintain

solely a federal practice) in an effort to make obscure the misconduct. In *Harris–Smith,* the respondent purported to practice exclusively bankruptcy law from her Maryland office. 356 Md. at 74, 737 A.2d at 568. Here, Ambe claimed to practice only immigration law from his Maryland office.

The attorney in *Harris–Smith* misrepresented or was silent on law firm advertisements, stationery, and business cards as to the limitation on her ability to practice law from her Maryland office. 356 Md. at 75–77, 737 A.2d at 568–69. Ambe did as well. Maj. op. at 104–09, 38 A.3d at 393–96.[1]

A comparison of the rule and code violations found in *Harris–Smith* and here are illuminating:

---

**1.** Aggravating Ambe's misconduct, he failed to modify his letterhead, even after receiving advice from Bar Counsel (earlier and in an unrelated case) how to do so and before the misconduct charged in the present case occurred. Maj. op. at 104–06, 38 A.3d at 393–95. Essentially, Ambe continued his improper practices in the face of knowing they were wrong.

| | Harris-Smith | Ambe |
|---|:---:|:---:|
| MRPC 5.5(a)<br>(unauthorized practice) | ✓ | ✓ |
| MRPC 5.5(b)(2)<br>(failure to indicate on business card that attorney may not practice in Maryland | | ✓ |
| MRPC 7.1(a)&(b)<br>(false or misleading communications about lawyer or lawyer's services) | ✓ | ✓ |
| MRPC 7.5(a)<br>(using firm name, letterhead, or other professional designation violative of MRPC 7.1) | ✓ | |
| MRPC 8.4(a)<br>(it is professional misconduct to violate the MRPC) | | ✓ |
| MRPC 8.4(b)<br>(criminal act reflecting adversely on lawyer's honesty, fitness or trustworthiness) | | ✓ |

|  | Harris–Smith | Ambe |
|---|---|---|
| MRPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) |  | ✓ |
| MRPC 8.4(d) (conduct prejudicial to the administration of justice) |  | ✓ |
| § 10-206(a)(1) Md. Code, Bus. Occ. & Prof. Art. (admission to Maryland Bar required to practice law in Maryland) |  | ✓ |
| § 10-601(a) Md. Code, Bus. Occ. & Prof. Art. (practicing law in Maryland without being admitted in Maryland prohibited) | ✓ | ✓ |
| SANCTION | 30 DAY SUSPENSION | REPRIMAND |

There is something wrong with this picture. The discrepancy in treatment cannot be explained by mitigating factors because the hearing judge, in either case, did not find, by a preponderance of evidence, any mitigating factors. It is plainly erroneous and legally incorrect for the Majority opinion here to claim that *Harris–Smith* "contained more serious infractions than those we perceive in the present case." Maj. op. at 137, 38 A.3d at 413. There simply is no rational basis to sanction Ambe more leniently than we did Ms. Harris–Smith.

The Majority opinion appears to pluck from the air *Attorney Grievance Commission v. Edib*, 415 Md. 696, 4 A.3d 957 (2010), to bolster its conclusion that a reprimand is appropriate in Ambe's case. Maj. op. at 141, 38 A.3d at 415. The only tangible link between *Edib* and the present case is that Edib and Ambe represented clientele involving mostly people from countries other than the United States. Edib's practice was described as "the representation of Turkish nationals immigrating to, or having business in, the United States," 415 Md. at 700, 4 A.3d at 960; however, the misconduct that brought

145

him to the attention of the Attorney Grievance Commission had nothing to do with the "federal overlay" context or the unauthorized practice of law. Rather, he was found to have violated MRPC 1.16(d) (failure to protect a client's interest upon termination of representation), 1.4 (failure to keep a client informed about a matter), and 8.4(a) (professional misconduct to violate the Maryland Rules of Professional Conduct), arising from his refusal to turn over promptly to his former client (or her new lawyer) documents in his file. Further distancing *Edib* from the present case is the presence of mitigating circumstances in *Edib*, 415 Md. at 721, 4 A.3d at 972–3. The facts, violations, and reasoning leading to imposition of a reprimand in *Edib* offer no insight and have no application to Ambe's case.

I would suspend Ambe for 30 days.

Judge BARBERA has authorized me to state that she joins in this opinion.